*463
 
 Cooke, J.
 

 In this article 78 proceeding, petitioner, St. Lawrence Gas Company, Inc., seeks to set aside that part of a Public Service Commission (PSC) order which rejected a "going value” adjustment, which would have added to petitioner’s rate base the sum of $3,116,454.
 

 The adjustment sought involves "development costs” incurred beginning in 1962 when it commenced service as a public utility. These costs apparently resulted from the fact that petitioner, while still a new utility, felt compelled to establish rates for natural gas which would be competitive with the price of oil, but which were below the industry norm for the period involved. According to petitioner, its rates for those years were not designed to produce an adequate return, and the rate adjustment sought here is designed to require present customers to make up for the past revenue deficiencies resulting from its earlier competitive pricing policies. It is noteworthy that, as determined by the hearing examiner, the rates established by petitioner were anticipated, in the third year of operations, to be lower than rates proposed by Niagara Mohawk Power Corporation, which contested petitioner’s application for a certificate of public convenience and necessity, and that petitioner’s lower rates were a factor in the decision granting it said certificate.
 

 The hearing examiner, after noting the PSC’s opposition, both on a theoretical basis and on the ground that the amount sought is overstated, denied the going value adjustment but did recommend an increase in the rate of return of over $620,000 annually. In rejecting the full adjustment sought, the examiner concluded that "a 'going value’ adjustment is nothing more than an euphemism for retroactive ratemaking”.
 

 The PSC, expressing approval of the hearing examiner’s characterization of petitioner’s going value adjustment claim, agreed that petitioner’s request was nothing more than an attempt to recoup low earnings in earlier years and concluded that present ratepayers should not be required to pay more because the rates charged by petitioner in the past produced returns below some claimed norm for the industry. Thereafter, Special Term dismissed petitioner’s application to annul
 
 *464
 
 the order of the PSC insofar as it rejected a going value adjustment to petitioner’s rate base, and the Appellate Division affirmed. We granted leave to appeal to this court.
 

 There should be an affirmance. If a gas utility proposes to increase its rates, the burden is on it to show that the proposed rate is just and reasonable (Public Service Law, § 72). In the instant matter, petitioner has failed to meet its burden. Both sides presented extensive testimony and, considerations of the going value adjustment aside, there has been no demonstration that the authorized increase of over $620,000 in annual revenues is unjust or unreasonable from the point of view of petitioner. However, while a determination that the statutory standard has been satisfied ordinarily ends the matter, further comment is warranted regarding the concept of a "going value” adjustment.
 

 As noted by the PSC in its opinion below in this matter, " '[gjoing value’ has been defined as the difference in value between a business in successful operation and the cost of the assembled plant not yet in full operation.” The controversy in this proceeding concerned the question of whether a going value adjustment may be used to take into account the fact that in the early years of operation of a new utility, in order to attract customers, it is sometimes necessary to charge rates which do not produce an adequate return to the utility, and hence to its investors. To the extent that the discussion in the proceedings below may suggest that the PSC is of the view that in all instances this type of loss may not be recouped by a utility, we here register our disagreement with this view.
 

 When a utility introduces a new service into an area, it bestows a benefit on the denizens of the region in return for rates which will adequately compensate investors and attract whatever capital is necessary to continue service. The question of whether a rate is just and reasonable must, of necessity, strike a balance between the interests of the consumer and those who invest in the utilities
 
 (Power Comm, v Hope Gas Co.,
 
 320 US 591, 603). Ordinarily, this determination will not concern rates imposed in prior years. In some instances, however, if a new utility attempted to set rates high enough to cover its initial costs, it would be unable to attract customers and consequently the service would not become available. In such an instance, it may be necessary, as well as just and reasonable, to charge a portion of these initial costs to later users (see 1 Kahn, Economics of Regulation [1970], p 113, n 73,
 
 *465
 
 for a discussion of this principle with respect to rates set by Comsat [the Communications Satellite Corporation]). In the same fashion, for the reason that future customers also benefit from start-up expenses, it may sometimes be just and reasonable to allow new enterprises to recover high initial costs at a later time (see
 
 id.,
 
 at pp 121-122).
 

 Since the petitioner here failed to demonstrate that the rate set was unjust or unreasonable, there is no need to determine whether the going value adjustment should have been allowed. It bears mentioning, however, that a strong argument may be made that the type of losses incurred by petitioner would not in any event be recoverable from present customers. Indeed, there is a difference between introducing rates which are designed to make a service initially affordable and rates which are fixed with the idea of driving out competition. Since the facts adduced below manifest that petitioner was simply competing with others, considerations of fairness would mandate a conclusion that these losses should not be borne by consumers.
 

 In concluding, we do not subscribe to the broad statement that the Supreme Court has overruled the doctrine of
 
 People ex rel. Kings County Light. Co. v Willcox
 
 (210 NY 479). When, in
 
 Power Comm, v Hope Gas Co.
 
 (320 US 591, 602,
 
 supra),
 
 the court explained that the commission was not bound to the use of reproduction cost or any particular prescribed formula to determine rates, it did not reject any method provided that the result reached is just and reasonable (see
 
 Matter of New York Tel. Co. v Public Serv. Comm.,
 
 309 NY 569, 576). Moreover, since the decision in
 
 Hope Gas Co. (supra)
 
 changed the standard for fixing rates, little reliance may be placed on cases (decided prior to that decision) which reasoned that since past losses do not tend to prove present value they may not be included in the rate base for the purpose of determining whether a rate is confiscatory. In those earlier cases the Supreme Court was not faced with the precise question here, and hence the decisions should not be read as precluding in all instances consideration of these losses in determining whether a rate charged is just and reasonable (cf.
 
 Galveston Elec. Co. v Galveston,
 
 258 US 388, esp 396). Of course the utility is not guaranteed a profit and generally its investors run the risk of losses in the same way as any other investor in a private business. For example, the utility’s customers should not bear the cost of inefficient management or poor planning
 
 *466
 
 (see 210 NY, at pp 491-492). Nevertheless, in order to fix rates that compensate investors for the risks assumed (see 320 US, at p 605), in some instances a proper determination of what is just and reasonable will require consideration of a new utility’s losses resulting from the rates charged in the early years of operation. These considerations aside, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
 

 Order affirmed.