In the Matter of CONSUMER PROTECTION BOARD OF THE STATE OF NEW YORK et al., Petitioners, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, December 18, 1980

APPEARANCES OF COUNSEL

*Rosemary S. Pooler (James F. Warden, Jr.,* of counsel), for Consumer Protection Board of the State of New York, petitioner.

*David J. Gilmartin (Patricia A. Dempsey* of counsel), for County of Suffolk, petitioner.

*Peter H. Schiff (John C. Crary* of counsel), for Public Service Commission of the State of New York, respondent.

*Edward M. Barrett (Robert C. Richards* and *Maida J. Oringher* of counsel), for Long Island Lighting Company, respondent.

*George Danzig Levine* for Norman J. Levy, *amicus curiae.*

HERLIHY, J.

On February 8, 1977, the Long Island Lighting Company (LILCO) filed a tariff schedule with the Public Service Commission (PSC) designed to increase its electric revenues by $100,600,000. Public hearings were held on the proposed rate increases on 27 days from March 22, 1977 through July 26, 1977. At the hearings, petitioners, the Consumer Protection Board of the State of New York (CPB), and the County of Suffolk (CS), participated actively in the proceedings along with the PSC, LILCO, the Metropolitan Retail Merchants Association and the Long Island Consumer Action, Inc., group. Thirty-nine witnesses gave evidence and 189 exhibits were received. Briefs and reply briefs were submitted to the Administrative Law Judge who rendered his decision in October, 1977. He recommended a revenue increase for LILCO of $64,900,000.

Petitioners both filed briefs on exceptions to the Judge's determination, and the PSC issued its opinion, permitting LILCO a revenue increase of $59,700,000. Petitioners then filed with the PSC a request for a rehearing wherein they challenged the inclusion of $200,000,000 worth of "construction-work-in-progress" (CWIP) in the rate base. Their request was denied.

The petitioners appear not to question the dollar amount of allowed revenue increase of $59,700,000. The primary issue raised by the petitioners in this CPLR article 78 proceeding is whether or not the PSC erred as a matter of law in its determination that CWIP is an item which may be included in the determination of an appropriate present rate.

The petitioners contend that it has been the practice of the PSC to prohibit utilities from collecting financing costs from consumers on a *plant under construction* and that the PSC has limited the recovery of costs to a plant that is *used and useful*. As to costs associated with funds used in construction, the PSC's practice is to provide an allowance as compensation for the costs and to add to the rate base both the actual cost of the construction and the allowance when

a plant comes into service. This is commonly denominated as "AFC" (allowance for funds used during construction).

The PSC does not dispute this contention of the petitioners but states that it views the inclusion of the CWIP in rate bases as an *extraordinary remedy* for cash-flow problems to be used only in a case, like the present, where there is a "compelling need". In this instance such "compelling need" is necessary to maintain the integrity of the electric service of the LILCO. The decision states that the PSC has reviewed the LILCO construction budget, which is dominated by Shoreham-related expenditures (construction of a nuclear generating station), and concludes that it is proper. We agree with this interpretation by the PSC which has the authority to set rates that are "just and reasonable" (Public Service Law, § 65, subd 1; § 66, subd 12; § 72).

In *Federal Power Comm. v Hope Gas Co.* (320 US 591, 602), the Supreme Court held that the Federal standard of just and reasonable rates meant that "it is the result reached not the method employed" which governs the rate-making procedure. The *Hope* standard has been followed by many New York courts. In *Matter of New York Tel. Co. v Public Serv. Comm. of State of N. Y.* (64 AD2d 232, mot for lv to app den 46 NY2d 710), this court, citing *Hope,* said that the PSC is not bound to use any one approach in setting rates, nor is it bound to consider or reject any one particular factor in its administrative process (see *Matter of St. Lawrence Gas Co. v Public Serv. Comm. of State of N. Y.,* 54 AD2d 815, affd 42 NY2d 461; *Matter of Consolidated Edison Co. of N.Y. v New York State Public Serv. Comm.,* 53 AD2d 131, mot for lv to app den 40 NY2d 803; *Matter of Long Is. Light. Co. v Maltbie,* 249 App Div 918).

The petitioners urge several points to sustain their apparent position that the determination of the PSC to include CWIP otherwise lacks a rational basis.

It is contended that the ratio of earnings to interest expense is too low because a restriction in the company's general and refunding mortgage bond indenture limits the inclusion of earnings from an allowance for funds used during construction (AFC) to 10% of operating earnings when calculating coverages. It is contended that the limitation

could be altered by making the restriction 15% as used by other utilities. This highly technical bookkeeping problem is explained in the PSC decision where it is stated: "Because of its high percentage of non-cash AFC earnings, LILCO's financial position is not as strong as it should be."

The other arguments of the petitioners concern alternate measures of financing such as borrowing, bonding and the issuance of additional stock.

With reference to the PSC decision to recognize CWIP in establishing just rates and in explaining its position as to some of the alternative measures argued by the petitioners, the opinion states: "If that were not the case [to recognize CWIP], the only way we could provide LILCO with the revenues it needs to continue to provide safe and adequate service would be to increase the allowed return to the stockholders. Using that approach, the necessary rate increase and revenues obtained from consumers would be no less than if we included CWIP in rate base, but the stockholders might be earning a return in excess of the market-indicated cost of capital. And the impact of Shoreham on rate base when it goes into operation would be significantly higher because that AFC would continue to accrue. Moreover, our decision to include CWIP and reduce AFC enabled us to reduce the stockholders' return by 0.5% and reduce earnings by about $4.6 million." The PSC further observed: "It is worth noting that this .5 percent reduction in the equity return requirement, equivalent to approximately $6 million, is possible only because of our decision to include CWIP in rate base. If we had not done so, LILCO's cost of capital and consumer's rates would be higher by that amount."

We have also considered the petitioners' contention that present customers are paying for future consumer benefits which we accept as being the fact. It is academic to say that rate increases are not popular, but it is realistic to note that utility construction costs are the subject of inflation and particularly that the cost of the Shoreham nuclear plant in the process of construction is the subject of such inflation.

The principal issue appears to be one of "timing" as to the method of financing construction, to wit, whether funds

for such construction should be raised periodically by rate increases or otherwise financed with the rate increases to await the time when the construction becomes *used and useful.*

The court construes statutes, but it can defer to an agency's determination, particularly when the issue in dispute requires expertise in a complex and technical subject matter (see *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459). In sum, the PSC was justified under the circumstances in including in the rate increase the cost of the construction of the work in progress (CWIP).

The determination should be confirmed, and the petition dismissed, without costs.

MAHONEY, P. J., GREENBLOTT, SWEENEY and KANE, JJ., concur.

Determination confirmed, and petition dismissed, without costs.