COUNTY OF SUFFOLK, in behalf of itself and all other ratepayers of the Long Island Lighting Company similarly situated, Plaintiff,

v.

LONG ISLAND LIGHTING COMPANY, General Electric Corporation, Stone & Webster Engineering Corp., Courter & Company Incorporated, Dravo Utility Constructors, Inc. and Comstock-Jackson, Defendants.

No. 82 Civ. 2045.

United States District Court, E.D. New York.

Jan. 14, 1983.

---

Reilly, Like & Schneider, by Irving Like, Sp. Counsel for the County of Suffolk, Babylon, N.Y., for plaintiff.

Cadwalader, Wickersham & Taft, New York City, Hunton & Williams, Richmond Va., for defendant Long Island Lighting Co.; George D. Reycraft, Richard J. Wiener, New York City, Edward M. Barrett, Rosalind M. Gordon, Mineola, N.Y., Joseph M. Spivey, III, D. Alan Rudlin, Richmond, Va., of counsel.

Mayer, Brown & Platt, Chicago, Ill., for defendant General Electric Co.; John M. Carroll, William A. Gordon, Chicago, Ill., of counsel.

Mudge, Rose, Guthrie & Alexander, New York City, for defendant Stone & Webster Engineering Corp.; Donald J. Zoeller, Laurence V. Senn, Jr., Barry Werbin, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendant Courter & Co. Inc.; Robert J. Bagdasarian, New York City, of counsel.

LeBoeuf, Lamb, Leiby & MacRae, New York City, for defendant Dravo Utility Constructors, Inc.; John S. Kinzey, New York City, of counsel.

Parker, Chapin, Flattau & Klimpl, New York City, for defendant Comstock-Jackson; Alvin M. Stein, Menachem J. Kastner, New York City, of counsel.

BARTELS, District Judge.

This matter is before the Court on a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). On October 27, 1982, this Court denied plaintiff's motion to remand the action to state court, holding that plaintiff's allegations of noncompliance by defendants with the safety regulations of the Nuclear Regulatory Commission (the "NRC") presented questions "arising under" the federal law. The question now presented is whether an action seeking common law, legal and equitable relief for defendants' alleged negligence, breach of contract and warranty, and misrepresentation and concealment relating to the design and construction of a nuclear power plant can survive under federal and state law.

### Background

The Shoreham Nuclear Power Station ("Shoreham") emerged from the drawing boards of defendant Long Island Lighting Co. ("LILCO") back in 1967. The following year LILCO applied to the NRC's predecessor agency, the Atomic Energy Commission ("AEC"),[1] for a construction permit, as required under the Atomic Energy Act, as amended, 42 U.S.C. §§ 2011 et seq. (the "AEA"). In April, 1973, after review by the AEC staff and the Advisory Committee on Reactor Safety ("ACRS"),[2] and after three years of exhaustive adjudicatory proceedings before the Atomic Safety and Licensing Board ("ASLB"), the construction permit was issued. The construction phase of Shoreham activated the AEC's, and then NRC's, Inspection Program, a predefined, systematic program that continues to date and has involved 146 regular and 3 special inspections and the expenditure of approximately 1200 inspection man-days through May, 1982. A NRC resident inspector was permanently assigned to Shoreham for daily inspection purposes as of September 30, 1979, and in June, 1982, LILCO hired Torrey Pines Technology to make another separate inspection.

In January, 1976, LILCO applied to the NRC for a license to operate Shoreham (NRC Docket No. 50–322(OL)). Plaintiff, the County of Suffolk, intervened in the operating license proceedings in 1977, and

1. The licensing and regulatory functions of the Atomic Energy Commission ("AEC") were transferred to the Nuclear Regulatory Commission ("NRC") as part of the Energy Reorganization Act of 1974, 42 U.S.C. § 5841(f).

2. The Advisory Committee on Reactor Safety ("ACRS") is an independent body of experts established by the Atomic Energy Act, as amended, 42 U.S.C. §§ 2011 et seq. (the "AEA") to "review safety studies and facility license applications ... [and] advise the [NRC] with regard to the hazards of proposed or existing reactor facilities and the adequacy of proposed reactor safety standards." 42 U.S.C. § 2039.

remains a participant in them, including the ongoing ASLB hearings that commenced in May, 1982. As things currently stand, construction of Shoreham is nearing completion, and LILCO hopes to undertake fuel loading sometime in 1983. In the meantime, LILCO's operating license application remains under consideration pending the outcome of the NRC's review procedures.

The cost history of Shoreham has brought the phrase "cost escalation" to new heights. In 1969, LILCO projected that construction of Shoreham would cost $261 million. A mid–1982 LILCO estimate pushes Shoreham's price tag over the $2.5 billion mark. In order to alleviate this tremendous financial burden, LILCO has applied to the New York State Public Service Commission ("PSC") for the inclusion of part of the construction costs in LILCO's rate base prior to Shoreham's going on line. To date, the PSC has permitted inclusion of $355 million in Construction-Work-in-Progress ("CWIP") costs in LILCO's rate base, and is currently proceeding to establish the ratemaking principles that will govern absorption of the remainder of Shoreham's costs into the rate base once Shoreham goes into operation (Case No. 28252). In addition, the PSC is separately investigating responsibility for the steep escalation in Shoreham's costs (Case No. 27563). Plaintiff has been and continues to be an active participant in all these proceedings, and in one case unsuccessfully sought judicial reversal of the PSC's decision to include $200 million worth of CWIP in LILCO's rate base. *See Consumer Protection Board v. Public Service Commission*, 78 A.D.2d 65, 434 N.Y.S.2d 820 (3d Dep't 1980) ("Article 78" proceeding to review final determination of an administrative agency).

### The Complaint

Plaintiff commenced this putative class action in the Supreme Court of the State of New York, Suffolk County, on June 23, 1982. On July 12, 1982, defendants LILCO, General Electric Corp. ("G.E."), Stone & Webster Engineering Corp. ("S&W"), Dravo Utility Constructors, Inc. ("Dravo"), and Comstock-Jackson ("C–J") removed the action to this Court on the ground that the complaint set forth claims arising under federal law, to wit, the AEA. Thereafter, plaintiff moved to remand the action to state court, contending that the complaint set forth state-based common law claims only. On October 27, 1982, this Court denied plaintiff's motion, holding that federal jurisdiction existed in view of the complaint's critical reliance on violation of NRC-promulgated regulations in establishing plaintiff's right to relief. Thereafter, on November 17, 1982, defendants gave notice of their motion to dismiss, and extensive oral arguments were held thereon.

The Court outlined in its October 27th opinion [3] the structure and substance of the complaint. To summarize, the complaint contains numerous allegations of deficiencies in Shoreham's design and construction, most of them bottomed on non-compliance with the AEA's implementary regulations. Four causes of action are set forth, denominated as negligence, strict liability/breach of warranty, breach of contract, and misrepresentation/concealment. The relief sought includes an injunction against commencement of Shoreham's operation pending the outcome of a proposed court-supervised design review and physical inspection, and recovery of electric rate "overcharges" reflecting increases in Shoreham's construction costs.

Defendants argue that the complaint seeks to ensure the radiological safety of a nuclear facility, and as such is preempted by the AEA and its regulatory scheme, which entrusts adjudication of such claims to the NRC in the first instance. In support of their argument, defendants point to the inspection and operating suspension sought as relief, contending that such relief is solely and necessarily designed to establish whether Shoreham is free of safety defects that would endanger the lives and

**3.** 549 F.Supp. 1250 (E.D.N.Y.1982).

property of Long Island residents.[4] In fact, defendants maintain that plaintiff's assertion that the inspection is needed to quantify damages arising primarily from negligence is nothing more than an attempt to "bootstrap" its allegations into a court-supervised inspection of Shoreham to determine its radiological hazards and safety. Defendants also characterize the complaint as attempting to assert a private cause of action under the AEA, something that both sides agree does not exist. Finally, defendants contend that plaintiff's claim for damages based on the costs of design and construction defects is simply a challenge to PSC ratemaking, and as such can only be adjudicated before the PSC in the first instance.

In reply, plaintiff insists that the complaint sets forth a "pocketbook" action for damages due to unnecessary and extravagant increased costs of construction that only incidentally relates to the radiological safety of Shoreham. It adds that the inspection and operating suspension during the interim which it seeks merely constitute a first, essential step in gathering information for the purpose of quantifying damages. Plaintiff denies that the complaint either attempts to set forth a private cause of action under the AEA, or sets forth claims that are preempted by the AEA. It cites the Price-Anderson Act, 42 U.S.C. § 2210, and its legislative history for the propositions that the AEA left state tort and contract law intact except in the narrow case of an extraordinary nuclear occurrence, and that tort and contract actions may be maintained between private parties in disputes involving the construction and operation of nuclear facilities. Finally,

plaintiff argues that neither the NRC nor the PSC has jurisdiction to adjudicate "damage claims" between itself and the defendants.

### Federal Preemption

 Jurisdiction over this case arises under 28 U.S.C. §§ 1331 and 1337. As heretofore stated, plaintiff has cast its complaint into four causes of action—negligence, breach of warranty, breach of contract, and misrepresentation. The alleged cause of action for negligence seems to be the predominant claim, although they all are subject to the attack of preemption. Therefore the threshold issue is whether these alleged causes of action are preempted under the Atomic Energy Act of 1954, as amended, 42 U.S.C. §§ 2011 *et seq.* The preemption doctrine is founded on article 6, clause 2, of the United States Constitution, the "supremacy clause," and expressly makes the Constitution and the laws of the United States the supreme law of the land binding upon judges in every state. *See Pennsylvania v. Nelson,* 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Preemption may occur in a number of ways including by express statutory language, *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); legislative history, *Rice v. Santa Fe Elevator Corp., supra;* or by reason of conflict between federal and state regulations when compliance with both is impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Even when federal law is found to be preemptive,

4. Defendants cite 22 different instances in which the complaint allegedly implicates the radiological safety of Shoreham and the federal regulations governing its construction and operation. Defendants' Joint Reply Memorandum, Exhibit A. For instance, paragraph 6(f) of the complaint alleges that the plaintiff has standing in that the County of Suffolk is "responsible for the protection of the health, safety and well-being of its citizens, which would be adversely affected if design and construction defects in Shoreham caused or contributed to an accident." Paragraph 14C alleges that NRC

reports indicate that important safety systems, as built, do not conform to their designs. Paragraph 17(c) alleges that defendants have seriously and persistently violated federal regulations in regard to "Shoreham's critical safety systems and other systems essential to reliability and economy of operation." As a final example, paragraph 19 states that "Defendants' negligence has caused serious defects in Shoreham which has [sic] created a continuing dangerous and defective condition thereby increasing the risk of major accident, and great damage to person and property."

state law is invalid only to the extent that it clearly has been preempted. *Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission,* 659 F.2d 903 (9th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2959, 73 L.Ed.2d 1348, *cert. granted* in *Pacific Gas and Electric Co. v. State Energy Resources Conservation & Development Commission,* —— U.S. ——, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982).

Since the allegations of the complaint involve the construction and operation of a nuclear reactor, they concern radiological hazards and safety, a field that the AEA's legislative history and judicial construction indicate is preempted by federal law. A brief reiteration of the authorities is sufficient. The landmark and leading case on the subject is *Northern States Power Co. v. Minnesota,* 447 F.2d 1143 (8th Cir.1971), *aff'd,* 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972). There, the State of Minnesota imposed certain conditions regulating radiation levels for a waste disposal permit of a nuclear utilization facility substantially more stringent than those imposed by the AEC. The Eighth Circuit thoroughly analyzed the legislative history of the AEA and its amendments, as well as the pervasive federal regulatory schemes covering the construction and licensing of atomic energy plants. Although dual compliance with both AEC and state regulations was possible, the court found that the federal regulation was exclusionary. It specifically held that Congress, by its 1959 amendments to the AEA, 42 U.S.C. § 2021(b), (c), and (k), expressed an intent to deprive the states of any authority to regulate radiation hazards associated with the construction and operation of nuclear facilities except when a state entered an agreement with the AEC pursuant to § 2021(b), and then only transferring to the state authority over byproduct, source, and special nuclear material in quantities insufficient to form a critical mass. This preemption analysis has been applied in a number of cases involving atomic energy plants. *See, e.g., Simmons v. Arkansas Power and Light Co.,* 655 F.2d 131 (8th Cir.1981) (a

private litigant cannot shut down a nuclear plant pending development of an emergency plan for dealing with reactor accidents); *Liesen v. Louisiana Power and Light Co.,* 636 F.2d 94 (5th Cir.1981) (a private litigant cannot enjoin construction of a nuclear power plant claiming violations of AEA standards and regulations); *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231 (3d Cir.1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed. 2d 824 (1981) (private litigants cannot enjoin nuclear plant operators based upon allegations of a plan to release radioactive water into the Susquehanna River); *Lower Alloways Creek Township v. United States Nuclear Regulatory Commission,* 481 F.Supp. 443 (D.N.J.1979) (private action to restrict the utility's proposed expansion of waste storage capacity denied); *United States v. City of New York,* 463 F.Supp. 604 (S.D.N.Y.1978) (the New York City Health Code requiring a city license concerning a nuclear reactor preempted by the AEA); *City of Cleveland v. Public Utilities Commission of Ohio,* 64 Ohio St.2d 209, 414 N.E.2d 718 (1980) (Public Utilities Commission preempted by AEA from ordering shutdown of a nuclear plant to prevent charging ratepayers the costs of operating that particular plant); *New Jersey Department of Environmental Protection v. Jersey Central Power & Light Co.,* 69 N.J. 102, 351 A.2d 337 (1976) (operator of nuclear plant not liable for operating a circulating pump with cool water killing fish); *Marshall v. Consumers Power Co.,* 65 Mich. App. 237, 237 N.W.2d 266 (1975) (state courts preempted from considering the workability of the nuclear plant cooling system and the possibility of an accident), and *Commonwealth Edison Co. v. Pollution Control Board,* 5 Ill.App.3d 800, 284 N.E.2d 342 (1972) (state statute regulating level of radioactive discharge preempted by the AEA). *Compare Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission, supra* (state moratorium on construction of nuclear plants and alternate-siting requirement not preempted be-

cause not aimed at radiation hazards and safety).[5]

It is true, as claimed by the plaintiff, that not all matters relating to atomic energy are under the regulatory power of the federal government. For instance, § 2021(b) of Title 42 of the United States Code permits the NRC to enter an agreement with the governor of any state transferring regulatory authority to the state with respect to byproduct, source, and special nuclear materials and any radiation hazards associated therewith.[6] Subsection (k) of the same section provides:

> Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards.

The issue is, therefore, raised as to whether plaintiff's complaint charging common law negligence regarding the design and construction of Shoreham actually impinges upon the federal government's exclusive authority over the radiological safety of nuclear facilities. To answer this question it is necessary to re-examine the complaint to ascertain to what extent, if any, plaintiff's claims fall within the AEA's preemptive scope.

■ The nature and essence of the complaint consist of defects in the design and construction of Shoreham's reactor, pleaded as common law causes of action sounding in negligence, breach of contract, and misrepresentation. Nonetheless, the complaint seeks to regulate, through the courts, the radiological safety of Shoreham as demonstrated by its allegations charging violations of the NRC's quality control (QC) and quality assurance (QA) regulations in the construction of Shoreham. (10 C.F.R. 50.-55(e) and Part 50 Apps. A, B (Subparts I to VIII), C, D, G, I).[7] It asserts that the pattern of QA/QC breakdowns at Shoreham has involved Shoreham's critical safety systems and other systems essential to reliability and economy of operation. In its prayer for relief plaintiff seeks judgment directing (1) an independent design review and physical inspection of all the critical safety systems pursuant to NRC regulations; (2) that defendants pay as damages the amount of past "overcharges" in electric rates; (3) that LILCO reduce its electric rates or rate base to prevent future overcharges; and (4) that LILCO be enjoined from (a) charging any electric revenues reflecting increases in Shoreham construction costs attributable to design or construction defects; (b) applying to the PSC for inclusion into rate base of any CWIP reflecting increases in Shoreham construction costs attributable to design or construction costs; and (c) commencing operation of Shoreham pending submission of the report of inspection to this Court.

There is no less reason why the AEA preemption with respect to state legislative acts pertaining to radiological hazards and safety of nuclear reactors should not apply equally to common law causes of action involving the same hazards and plant safety. See Silkwood v. Kerr-McGee Corp., 667 F.2d 908, 923 (10th Cir.1981), cert. granted, —— U.S. ——, 103 S.Ct. 721, 74 L.Ed.2d 948 (1983); Murphy and LaPierre, Nuclear "Moratorium" Legislation in the States and the Supremacy Clause: A Case of Express Preemption, 76 Colum.L.Rev. 392, 412–13

---

5. See Note, A Framework of Preemption Analysis, 88 Yale L.J. 363, 379–81 (1978).

6. Other federal legislation has carved out additional areas of state regulation of nuclear facilities. For example, the Clean Air Act Amendments of 1977, codified at 42 U.S.C. § 7422, authorize states to regulate radioactive air emissions. See Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission, 659 F.2d at 926–27; City of Cleveland v. Public Utilities Commission of Ohio, 414 N.E.2d at 722.

7. In addition to claiming QA/QC violations, plaintiff complains of the "radiological hazard to workers involved" in repair in the event of an accident after the plant goes into operation. Complaint ¶ 48(b). Plaintiff's allegations of violation of federal regulations are further detailed in note 4, supra, and in this Court's decision on plaintiff's motion to remand, 549 F.Supp. at 1253 & n. 5.

(1976). For this Court to adjudicate plaintiff's allegations of violation of federal regulations governing the safety of nuclear power plants would require the usurpation of the powers which Congress granted exclusively to the NRC. But here the plaintiff seems to go much further than charging violation of federal regulations. It seeks a physical inspection of Shoreham and an injunction against its operation pending judicial review of inspection results. That such an inspection is an interference with NRC authority is manifest. Plaintiff argues that the NRC is not authorized to adjudicate or remedy plaintiff's grievances. Assuming this to be true, it does not follow that this Court has such authority or must create common-law causes for the purpose. In support of its contention plaintiff cites the following three cases: *Illinois v. Kerr-McGee Chem. Co.,* 677 F.2d 571 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982); *Silkwood v. Kerr-McGee Corp., supra;* and *Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission, supra.* These authorities, however, are of little help to plaintiff's theory.

*Illinois v. Kerr-McGee* involved consolidated appeals arising from two separate lawsuits brought by the State of Illinois and the City of West Chicago, both complaining of conditions on sites on which defendant produced compounds derived from radioactive material and disposed of byproducts. The construction or operation of a nuclear reactor was not involved. The court held that Illinois' complaint pleaded only state causes of action of nuisance and statutory violations and therefore had been improperly removed to federal court. 677 F.2d at 577. However, West Chicago's action, properly removed by reason of diverse citizenship, involved two claims: one predicated upon dangerous conditions of defendants' buildings, and the other a public nuisance claim based upon defendants' off-site dumping of byproducts. As to the first claim, the court found nothing in the record which indicated an interference with NRC regulation of radiation hazards, and as to the second claim, the court held that the record was insufficient to determine whether the dumps posed radiation hazards and therefore remanded the issue to the district court. There was no showing in the case that NRC regulations were applicable.

*Silkwood v. Kerr-McGee Corp.* was an action for personal injury suffered by the plaintiff's decedent as a result of her exposure to radiation while working in a nuclear fuel processing plant utilizing plutonium. The court held that the injury was exclusively covered by Oklahoma's Workers' Compensation Act, Okla. Stat. Ann. tit. 85 (West 1971 & Supp.1982), and that imposition of tort liability for off-site property damage in that case would not significantly interfere with the federal regulation of the Kerr-McGee plant. Patently, this case is no authority justifying interference with the construction or operation of a nuclear plant.

*Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission* involved a preemption challenge to a state-imposed moratorium on the construction of new nuclear power plants and a requirement that the utilities submit three alternate sites for proposed plants. There the court concluded that the moratorium was aimed at the economics of nuclear power development and not at radiation hazards, and further, that the alternate-siting provision was consistent with the states' authority to regulate the location of proposed power plants. Manifestly, the siting provision did not intrude upon the federally preempted field of protection against radiation hazards involved in the construction and operation of nuclear reactors.

Plaintiff also relies upon the legislative history of the Price-Anderson Act, 42 U.S.C. § 2210, an amendment to AEA, in contending that the AEA does not preempt the common law tort or contract claims contained in its complaint. The obvious purpose of the Price-Anderson Act was to limit the potential liability of nuclear facility licensees in the event of a "nuclear incident" as defined in 42 U.S.C. § 2014(q). A 1966 amendment to the Price-Anderson Act authorizes waiver of certain defenses by a

nuclear facility licensee in the case of an "extraordinary nuclear occurrence" as defined in 42 U.S.C. § 2014(j).[8] Such occurrences include any event causing radiation levels off-site which the NRC determines to be substantial and probably result in substantial damage to persons or property off-site. In the Senate Report that accompanied passage of that amendment, it was stated that absent an extraordinary nuclear occurrence, a claimant's rights would be determined under traditional tort law. S.Rep. No. 1605, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Ad.News 3206–10. From this the plaintiff argues that the Price-Anderson Act permits retention of state law with respect to its causes of action. The difficulty with plaintiff's argument is that the Price-Anderson Act refers to damages from nuclear incidents and occurrences which are not the gravamen of plaintiff's complaint. *Van Dissel v. Jersey Central Power & Light Co.*, 152 N.J. Super. 391, 377 A.2d 1244, 1249 (1977), *aff'd*, 181 N.J.Super. 516, 438 A.2d 563 (App.Div. 1981); *see also Silkwood v. Kerr-McGee Corp.*, 667 F.2d at 922.

Plaintiff has admitted that it is an intervenor in the NRC licensing proceedings. Accordingly, the defendants complain that plaintiff has not exhausted its administrative remedies before instituting the present action. But construing the complaint according to its allegations as setting forth either common law causes of action or a private action to enforce the provisions of the AEA, plaintiff has no administrative remedies. Only if plaintiff's action can possibly be construed as the complaint of an intervenor in a NRC proceeding objecting to the findings and proceedings of NRC, can it be asserted that plaintiff has not exhausted its administrative remedies. Compare *Simmons v. Arkansas Power & Light Co.*, *supra* (action to enforce AEA dismissed because remedy unavailable to private litigant rather than on exhaustion grounds), with *Lower Alloways Creek Township v. United States Nuclear Regulatory Commission*, *supra* (exhaustion not re-

quired and district court may hear claims under certain circumstances).

Concerning such an intervenor, Congress did not foreclose private participation in administrative proceedings with respect to the issuance or modification of construction and operating licenses. Under 42 U.S.C. § 2239(a), the NRC must grant a hearing "upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding." The circumstances under which an interested person may intervene in licensing proceedings are further detailed in 10 C.F.R. § 2.714. The regulations also provide that "[a]ny person may file a request for the . . . [NRC] to institute a proceeding . . . to modify, suspend or revoke a license, or for such other action as may be proper." *Id.* § 2.206. Intervenors are permitted to appeal initial licensing decisions to the Atomic Safety and Licensing Appeals Board ("ASLAB"), *id.* §§ 2.762, 2.785, and then appeal ASLAB determinations to the NRC, *id.* § 2.786. Finally, judicial review of final NRC determinations in the courts of appeal is made available pursuant to 42 U.S.C. § 2239(b). *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 526–27, 98 S.Ct. 1197, 1203–1204, 55 L.Ed.2d 460 (1978); *Simmons v. Arkansas Power & Light Co.*, 655 F.2d at 134; *Liesen v. Louisiana Power & Light Co.*, 636 F.2d at 95; *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d at 237–39; *Sunflower Coalition v. Nuclear Regulatory Commission*, 534 F.Supp. 446, 448 (D.Colo.1982); *Desrosiers v. United States Nuclear Regulatory Commission*, 487 F.Supp. 71, 73–74 (E.D.Tenn.1980). Indeed, as previously indicated, Suffolk County has intervened in the administrative proceedings of NRC above described. There the plaintiff has raised the same contentions and is litigating the very defects in design and construction of Shoreham which it is now raising in its complaint. (NRC Docket No. 50–322(OL), Suffolk County Conten-

---

8. *See* Murphy and LaPierre, *Nuclear "Moratorium" Legislation in the States and the Su-* *premacy Clause: A Case of Express Preemption*, 76 Colum.L.Rev. 392, 405–406.

tions 12, 13, 14, and 15). However, to circumvent these administrative proceedings, plaintiff has alleged common law causes of action which, of course, provide for no administrative remedies and which have been preempted by the AEA.

█ On the other hand, if, as defendants urge, the complaint is treated as an action to enforce the AEA, then such judicial enforcement is limited to actions brought by the United States Attorney General. 42 U.S.C. §§ 2271(c) and 2280. Section 2271(c) provides that:

> No action shall be brought against any individual or person for any violation under [chapter 23 of Title 42] unless and until the Attorney General . . . has advised the Commission with respect to such action *and no such action shall be commenced except by the Attorney General. . . .* (emphasis supplied).

*See Simmons v. Arkansas Power & Light Co.,* 655 F.2d at 134; *Liesen v. Louisiana Power & Light Co.,* 636 F.2d at 95; *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d at 237–39. The complaint in substance does seek relief from violations of the AEA and thus is an effort to assert a private cause of action although the plaintiff has conceded that it has no such private action under the AEA. Having concluded that plaintiff's causes of action have been preempted by the federal government under the AEA, it would hardly seem necessary to proceed further.

### State Preemption

█ However, since the plaintiff sues as a ratepayer and its only possible damages would arise from increased rates, it is relevant to point out that its action is in addition preempted under state law. Plaintiff concedes that its damages stem from the inclusion in LILCO's rate base of $355 million in construction costs. It had its opportunity in past PSC proceedings to protect the rate base as to past costs. Whether the possibility still exists is a matter of PSC jurisdiction. Here we have a state preemption of this rate issue by the PSC analogous to federal preemption of radiological haz-

ards. In creating the PSC the New York Legislature specifically granted general jurisdiction to PSC over electric utilities and specific jurisdiction and duty to supervise electric rates and to ensure that they are just and reasonable. N.Y.Pub.Serv.Law §§ 5(1)(b), 65(1), 66(5) (McKinney 1955 & Supp.1982). This jurisdiction supersedes all other remedies. *Purcell v. New York Central R.R.,* 268 N.Y. 164, 172, 197 N.E. 182, 184 (1935); *Central Hudson Gas & Electric Corp. v. Napoletano,* 277 A.D. 441, 443, 101 N.Y.S.2d 57, 59 (3d Dep't 1950); *Cardone v. Consolidated Edison Co. of New York, Inc.,* 197 Misc. 188, 191, 94 N.Y.S.2d 94, 97 (App. Term 1st Dep't 1949), *aff'd,* 276 A.D. 1068, 96 N.Y.S.2d 491 (1st Dep't 1950). Obviously, plaintiff will suffer no damages until the PSC acts improperly. But even then plaintiff's judicial remedy must lie pursuant to a New York Appellate Division Article 78 proceeding and finally before the New York State Court of Appeals. This Court cannot circumvent the legislative scheme for rate-making by presuming that the PSC will not discharge its statutory obligation and assume jurisdiction in the meantime. Plaintiff had and has its remedy by participating in the administrative procedure set up by the Public Service Law before it seeks redress through the courts. *Consumer Protection Board v. Public Service Commission,* 78 A.D.2d 65, 434 N.Y.S.2d 820 (3d Dep't 1980); *Ten Ten Lincoln Place, Inc. v. Consolidated Edison Co. of New York, Inc.,* 190 Misc. 174, 179, 73 N.Y.S.2d 2, 6–7 (Sup.Ct. Kings Co.1947), *aff'd,* 273 A.D. 903, 77 N.Y. S.2d 168 (2d Dep't 1948).

Specifically, the PSC is now examining Shoreham's construction costs to determine whether they were properly incurred or resulted from mismanagement, imprudence or gross inefficiency and what part of such costs belongs in LILCO's rate base. Thus the PSC is engaged in the precise ratemaking that the plaintiff has asked this Court to pursue, and plaintiff is actively participating therein. The PSC can deny LILCO the right to include these overcharges in the rate base if it finds it proper to do so. *See* "Order Establishing Proceeding to Investi-

gate the Cost of the Shoreham Nuclear Generating Facility" (Case No. 27563). If in the course of that proceeding the PSC determines that a physical inspection of the facility is necessary, it is authorized to order one subject to federal preemption concerns heretofore discussed. *See* N.Y.Pub. Serv.Law § 66(8) (McKinney 1955). Additionally, the PSC may hold LILCO responsible vis-a-vis its rate base for overcharges by contractors hired by LILCO to construct Shoreham. *See, e.g., In re Consolidated Edison Co.,* 14 N.Y.P.S.C. 863 (1974). The AEA does not forbid such state regulation, but specifically provides that electricity *qua* electricity remains within the province of the states. 42 U.S.C. § 2018.

### *Other Causes of Action*

■ The same infirmities of federal and state preemption concerning plaintiff's cause of action for negligence apply equally to its other common law causes of action for breach of warranty, breach of contract, and misrepresentation and concealment. This is true because the remedy each seeks is an injunction interfering with NRC regulation of Shoreham's construction and operation, and also a determination of LILCO's rate base despite the PSC's exclusive authority to set rates. Even were this not so, however, it is appropriate to point out in passing that there is no merit in those causes of action for the following reasons: (1) As to breach of warranty, privity is required as this is a non-personal injury action. *Martin v. Julius Dierck Equipment Co.,* 43 N.Y.2d 583, 374 N.E.2d 97, 403 N.Y.S.2d 185 (1978); *H.R. Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 159 N.E. 896 (1928); *Steckmar National Realty and Investment Corp. v. JI Case Co.,* 99 Misc.2d 212, 415 N.Y.S.2d 946 (Sup.Ct.N.Y.Co.1979); (2) as to breach of contract, plaintiff was clearly not a third-party beneficiary. *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931); *H.R. Moch Co. v. Rensselaer Water Co., supra;* and (3) as to misrepresentation and concealment, the allegations are far too indefinite to constitute a cause of action, Fed. R.Civ.P. 9(b), and in addition, the only possible reliance on the alleged misrepresenta-

tion was by the PSC. *See* N.Y.Pub. Serv.Law § 72 (McKinney 1955).

### *Conclusion*

Congress impliedly preempted all authority over radiological hazards and safety in the construction and operation of nuclear power plants. A private litigant may not maintain a cause of action under the AEA. Congress has established a precise mechanism for enforcing the AEA through the NRC regulations and the Attorney General. The mechanism is the administrative procedures of the NRC subject to exclusive judicial review by the Court of Appeals. There is, however, another objection to this Court's authority. The complaint primarily seeks rate relief from public utility rates. The comprehensive regulatory and rate-making procedures established by the New York Legislature completely preclude a consumer of electricity from litigating in this forum a ratemaking procedure. For this purpose the state has provided administrative procedures of the PSC subject to review in an Article 78 proceeding by the Appellate Division and ultimately by the Court of Appeals.

■ Dismissal of a complaint before discovery is a device that should not be employed unless the plaintiff cannot set forth facts that could possibly entitle him to relief. *Wade v. Johnson Controls, Inc.,* 693 F.2d 19 (2d Cir.1982). This is just such a case, and accordingly the complaint must be and hereby is dismissed under Fed.R.Civ.P. 12(b)(6).

Settle order.