In the Matter of ROBERT ABRAMS, as Attorney-General of the State of New York, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, December 6, 1984

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Richard W. Golden, Peter Bienstock* and *John W. Corwin* of counsel), petitioner *pro se.*

*David E. Blabey (Lawrence G. Malone* of counsel), for Public Service Commission of the State of New York, respondent.

*Chanoch Lubling* and *Kronish, Lieb, Shainswit, Weiner & Hellman (Bernard L. Sanoff* and *Joy Tannian* of counsel), for Consolidated Edison Company of New York, Inc., respondent.

**OPINION OF THE COURT**

HARVEY, J.

At the outset, it should be noted that although this CPLR article 78 proceeding was transferred to this court upon the motion of respondents, ostensibly on the issue of substantial evidence, petitioner raises no issue except those which he considers to be matters of law. Petitioner concedes that this court is free to hear and determine the matters now before it rather than to remit them to Special Term (see *Matter of 125 Bar Corp. v State Liq. Auth.,* 24 NY2d 174, 180). In view of this concession, we accept the case as transferred.

In 1982, respondent Consolidated Edison Company of New York, Inc. (Con Ed), filed a proposed rate increase with respondent Public Service Commission (PSC). Con Ed's request was designed to increase its electric rate revenues by $475 million. This proceeding concerns only that portion of the PSC's determination which allowed the amortization over an eight-year period of approximately $41 million in expenses relating to a discontinued pumped-storage project as a basis for establishing a portion of the rate increase.

The genesis of the dispute lies in the decision of Con Ed made in the early 1960's to construct a pumped-storage generating plant near the Hudson River utilizing certain land on Storm King Mountain in Orange County. This project, known as the Cornwall project, was to have been a 2,000 megawatt pumped-storage hydroelectric facility which would have utilized electrical power generated by conventional facilities to pump water during periods of slack electrical demand to a reservoir 1,000 feet higher than the Hudson River. Then, by draining water from the reservoir through its turbines during peak periods, it would have generated sufficient power to meet its increased demands during those periods. The decision to undertake the project was made at a time when forecasts indicated a continuing increase in the demand for electrical power, particularly during peak periods. The Federal Power Commission was in charge of licensing the construction of the project and it granted approval in March of 1965. However, because the plant was to be located in an area of unique beauty and major historical significance, the license triggered concern from a variety of environmental organizations that led to prolonged litigation. A combination of the prolonged litigation and certain major economic changes caused Con Ed to cancel the Cornwall project in 1980. The litigation was settled by Con Ed's relinquishment of its license and an agreement by opponents of the project to abandon their efforts to force Con Ed to install cooling towers at four existing Hudson River generating plants for a period of 10 years.

After an extensive hearing in which petitioner vigorously opposed Con Ed's rate increase application, the PSC determined that Con Ed's commitment to the Cornwall project was prudent when made and permitted rate recovery. It allowed Con Ed to write off the investment as an extraordinary property loss over eight years while earning a return on the unamortized balance. Petitioner then commenced this CPLR article 78 proceeding to annul the PSC's determination.

Petitioner has consistently maintained in his argument that the decision of the PSC was a violation of law. Relying upon

*Smyth v Ames* (169 US 466), petitioner contends that a utility can only recover its investments in property which is used and useful to its customers. He further contends that unless the threshold issue of whether the property is used and useful in providing electrical service is affirmatively established, it is unlawful for the PSC to permit the construction costs of such property as a basis for its rate-making determination. The authority of the PSC to set electrical rates is contained in sections 65 (subd 1), 66 (subd 12) and 72 of the Public Service Law. The only criteria contained in those statutes is that the rates be fair and reasonable and that the PSC consider all facts which in its judgment have bearing upon a proper determination of the question, with due regard among other things to a reasonable available return upon capital actually expended. If we are to grant petitioner his demanded relief, it would be necessary for us to conclude that the decision of the PSC was beyond the authority granted to that body by the Public Service Law.

Respondents contend that the PSC is not bound by any single criterion in arriving at a base for determining fair and reasonable rates. The United States Supreme Court, in *Power Comm. v Hope Gas Co.* (320 US 591, 602), determined that the Federal Power Commission "was not bound to the use of any single formula or combination of formulae in determining rates" and that "[u]nder the statutory standard of 'just and reasonable' it is the result reached not the method employed which is controlling". The reasoning in this case has been relied upon consistently by the courts of this State. This court has held on numerous occasions that the "PSC is not bound to use any one approach in setting rates, nor is it bound to consider or reject any one particular factor in its administrative process" (*Matter of Consumer Protection Bd. v Public Serv. Comm.*, 78 AD2d 65, 67, mot for lv to app den 53 NY2d 607, citing *Matter of New York Tel. Co. v Public Serv. Comm.*, 64 AD2d 232, mot for lv to app den 46 NY2d 710; see, also, *Matter of Consolidated Edison Co. v New York State Public Serv. Comm.*, 53 AD2d 131, mot for lv to app den 40 NY2d 803).

In our view, the guiding concept applicable to the facts of this case was stated by Justice Brandeis in his concurring opinion in *Southwestern Bell Tel. Co. v Public Serv. Comm.* (262 US 276, 290), when he stated that "[t]he thing devoted by the investor to the public use is not specific property, tangible and intangible, but capital embarked in the enterprise". It follows that the test of whether expenditures may be deemed used and useful is not whether the expenditures have resulted in a facility providing

electric service to the public, but whether the expenditures were prudently undertaken toward that end. In determining utility rates, the PSC: "must reach a just and reasonable result but there is no requirement that any specific factors be considered or excluded from consideration (*Matter of Consolidated Edison Co. of N. Y. v New York State Public Serv. Comm.*, 53 AD2d 131, 133, 134, mot for lv to app den 40 NY2d 803). It is only where the commission's exercise of judgment is without any rational basis or without any reasonable support in the record that the determination may be set aside (*Matter of New York State Council of Retail Merchants v Public Serv. Comm.*, 45 NY2d 661, 672 * * *)." (*Matter of General Motors Corp. v Public Serv. Comm.*, 95 AD2d 876, 877, mot for lv to app den 60 NY2d 557.)

We conclude that there was a rational basis for the PSC's determination in this case. The means for generating electricity can only be accomplished by long-range planning and implementation. In 1965, a prudent planner anticipated a progressively greater demand for electricity in the New York City area serviced by Con Ed. The pumped-storage concept was specifically suited for anticipated demands. Con Ed cannot be faulted for not anticipating either the environmental opposition or the oil embargo which caused its customers to become energy conscious and resulted in decreased demands. The decision, when made, was with the reasonable expectation and commitment that the Cornwall project would become a generating plant used and useful in the production of electricity for customers of Con Ed. The determination to require the ratepayers to absorb the loss was fair and reasonable.

KANE, J. P., MAIN, YESAWICH, JR., and LEVINE, JJ., concur.

Determination confirmed, and petition dismissed, without costs.