687 S.W.2d 162 (1985)
STATE ex rel. UNION ELECTRIC COMPANY, Appellant,
v.
PUBLIC SERVICE COMMISSION of the State of Missouri, Public Counsel for the State of Missouri, and Missouri Public Interest Research Group, Respondents.
No. 66014.
Supreme Court of Missouri, En Banc.
February 26, 1985.
Rehearing Denied April 2, 1985.
*163 Paul A. Agathen, Debra H. Janoski, St. Louis, for appellant.
William C. Harrelson, Kent M. Ragsdale, Public Service Com'n, Jefferson City, Tom W. Ryan, Jr., Missouri Public Interest Research Group, St. Louis, Douglas Brooks, Richard W. French, Daniel L. Maher, Jefferson City, for respondents.
BLACKMAR, Judge.
Union Electric Company is an investor owned electric utility serving the St. Louis metropolitan area, other parts of Missouri, and parts of three other states. In 1975 it sought and received a certificate of convenience and necessity from the Missouri Public Service Commission to commence construction of two nuclear reactor power plants in Callaway County, Missouri. See State ex rel. Util. Consumers Council v. Pub. Serv. Com., 562 S.W.2d 688 (Mo.App. 1978). The two projects are commonly known as Callaway I and Callaway II.
While the plants were in the process of construction, and before either had come on line for the generation of electric power, the voters of the state adopted at the 1976 *164 general election, through the initiative process, "Proposition One," now codified as §§ 393.135 and 393.136, RSMo 1978. Proposition One was enacted as a statute and not as a constitutional amendment. It reads as follows:
393.135Any charge made or demanded by an electrical corporation for service, or in connection therewith, which is based on the costs of construction in progress upon any existing or new facility of the electrical corporation, or any other cost associated with owning, operating, maintaining, or financing any property before it is fully operational and used for service, is unjust and unreasonable, and is prohibited.
393.136Notwithstanding the foregoing, any such charge which is being made or demanded on November 2, 1976, shall not be deemed unjust or unreasonable by reason of section 1 [§ 393.135] of this law, and shall not be prohibited thereby, for a period of ninety days after the effective date of this law.
Construction at both Callaway I and Callaway II continued following the enactment of Proposition One. No issue is presented in this case as to Callaway I. In 1981, however, Union Electric decided to abandon Callaway II, assigning as reasons the slackening of consumer demand and the high cost of borrowed funds. It then applied to the Commission for authority to amortize the portion of the costs expended on Callaway II attributable to Missouri over a five-year period. It sought to charge these costs as expense and not to include them in its rate base from which return on investment is computed. The Commission held that, by the terms of Proposition One, it was precluded from allowing the recovery of any amount from the ratepayers on account of the abandoned construction. Union Electric appealed to the Circuit Court of Cole County, which affirmed. Union Electric now appeals to this Court.

Jurisdiction
The question of our jurisdiction was raised in oral argument. We sense a degree of confusion in this case and others as to the scope of our initial appellate jurisdiction under Art. V, § 3, following the 1976 amendment. The pertinent language is as follows:
The supreme court shall have exclusive appellate jurisdiction in all cases involving the validity ... of a statute or provision of the constitution of this state, ...
Earlier constitutional language about "construction of the Constitution of the United States or this state" has been completely eliminated, and the numerous decisions about the difference between "construction" and "application" of constitutional provisions are no longer of concern. The sole question is whether the validity of the statute is involved. Appellant's Point II distinctly draws the validity of Proposition One into question. The appellant argues as follows:
If Proposition 1 is interpreted as a prohibition against recovery of prudent cancelled plant costs, denial of such recovery would deprive Appellant of its property without due process of law in violation of U.S. Const.Amend. XIV, Sec. 1, and Mo. Const. Art. 1, Sec. 10.
Appellant's Point III likewise argues that Proposition One, if interpreted as the Commission has interpreted it, violates the equal protection clause of the Fourteenth Amendment[1] and also Art. I, Sec. 2 of the Missouri Constitution. Appellant argues as follows:
If the Circuit Court's interpretation of Proposition 1 is correct, Appellant contends that it is a violation of the equal protection clause of the United States Constitution Amend. XIV, Sec. 1, and the Missouri Constitution Art. 1, Sec. 2, to single out electric utilities for treatment *165 different from that accorded telephone, gas, sewer or water companies in this state.
Both of these points[2] clearly allege that Proposition One is constitutionally invalid if construed so as to prohibit the recovery of the cost of abandoned construction.
It makes no difference that the appellant first argues that the Commission and the circuit court erred in the construction of Proposition One, so that this Court could decide the case in its favor without reaching the constitutional questions. A statute is to be construed so as to render it constitutional, if this is possible.[3] A court will avoid the decision of a constitutional question if the case can be fully determined without reaching it.[4] If our appellate jurisdiction properly attaches jurisdiction is not lost if the case is decided without reaching the constitutional issues, because our jurisdiction extends to all issues in the case. Appeals are not bifurcated under our practice.
The dissent to the contrary notwithstanding, we perceive no "stratagem" on appellant's part to confer a jurisdiction on this Court which does not exist. Nor do we recognize, tacitly or otherwise, "the lack of our jurisdiction." The appellant made a decision about points to be preserved for appeal.[5] It had no way of knowing which point or points the decision might turn on. The Court of Appeals was without power to decide some of the points properly preserved. We know of no precedent by which a case could be taken to the Court of Appeals for resolution of some issues and then transferred to this Court for a decision or other issues. The historic and sound rule is that the appeal is properly lodged in the court having jurisdiction over all issues in the case.

The Merits
The respondents argue that Proposition One states clearly that no construction costs may be charged to the ratepayers until the facility is on line and ready to produce electric power. They go on to argue that, by the terms of the statute, construction work which is never incorporated into an operational facility can never be charged for. This latter proposition is by no means so clear as respondents would have it.
It is helpful to review briefly the theory of utility regulation. Utilities, and particularly electric utilities, enjoy natural monopoly in the distribution of services which, under modern conditions, are absolutely necessary for the public. Pace v. City of Hannibal, 680 S.W.2d 944 (Mo. banc 1984). The legislature has shown concern that utilities which return a profit to shareholders, if left unregulated, would be able to exact unconscionable charges from the public, with no competitive pressure to inhibit rate increases. Rates charged by investor-owned utilities, in contrast to charges for other products and services, have long been subject to regulation by the Missouri Public Service Commission.
A helpful discussion of the theory of utility regulation and of the methods of treating costs of construction in progress is found in the opinion of the Supreme Court of New Hampshire in Appeal of Public Service Co. of New Hampshire, 480 A.2d 20 (N.H.1984). The general regulatory pattern *166 discussed in that opinion is essentially the same as ours.
There is a limit to the regulatory power. Rates established by the Commission must not be confiscatory. The utility must be able to recover its proper expenses and also a reasonable return on its prudent investment. The Commission has the corollary authority to scrutinize the expenditures of public utilities to determine whether they are appropriate in the rendition of utility services.
The construction of Callaway I and II was expressly authorized by the Commission. It was undertaken by Union Electric because of its projections of the needs of its customers, present and future. The law commends to the utility decisions as to what facilities are necessary in the service of its customers, subject to the commission's supervisory authority as exercised in certification and in the rate making process.
As soon as the Callaway project was authorized Union Electric sought to include an allowance for construction work in progress on Callaway I and II in its rate structure and was allowed by the Commission to do so.[6] Proposition One changed all this.
The manifest purpose of Proposition One was to make the utility wait until completion of new construction before including the cost in its rate base, or otherwise recovering its expenditures. Charges for construction work in progress had been expressly authorized by the Commission just a few months earlier. The language contains no express reference to cancellation. There are substantial indications that Proposition One was primarily concerned with timing, and that the possibility of abandonment was not present in the thoughts of the sponsors or of the voters. There was then much discussion in reports of regulatory commission decisions about the treatment of construction work in progress but little case law, judicial or administrative, about allowances for abandoned projects.
Reasons for requiring deferral can be easily perceived. (1) If construction charges are assessed in advance persons who will never have the benefit of the completed facilities such as those who die or move before the facility goes on line, will have to bear a part of the cost. (2) It has been demonstrated that the costs of both Callaway projects were substantially underestimated. If reimbursement is deferred until the facility is on line the Commission may have more effective continuing control. (3) If the utility must wait until construction is completed to obtain reimbursement or return, it may be impelled to complete necessary construction more expeditiously. This enumeration may be far from complete, but it serves to highlight some of the arguments which might be made in favor of legislation such as Proposition One.
The reasons just discussed have no application when proposed construction is abandoned. What we must decide, then, is whether the voters, in enacting Proposition One, intended to decree a forfeiture for any abandoned construction. If the law is read so as to require this result substantial problems ensue. Electric utilities will be reluctant to embark on new construction projects, or with long-range plans, if the prospect of forfeiture looms. Investors will hesitate to stake their money in venture with a controlled return and substantial risk of loss. A utility might be impelled to complete an uneconomic project if it otherwise faced total loss of a substantial investment. Then, finally, constitutional questions are presented if a utility is totally unable to recover a prudent expenditure made in good faith and, in the utility's view, for the benefit of the ratepayers.[7]
*167 We do not suggest for a moment that the wisdom of Proposition One is any concern of ours. We must apply the statute enacted by the voters unless persuaded that it is unconstitutional. But, in construing the statute, it is not inappropriate to look at the possible effects of alternative constructions, and to read the statute in the context of the established pattern of utility regulation. We should hesitate to mandate a result not explicitly required by the language if invidious consequences may result.
The respondents commend to our attention Appeal of Public Service Co. of New Hampshire, supra, and suggest that the statute there involved is essentially the same as ours. That case involved the allowability of costs of abandoned nuclear power plants. The Court held that the cancellation charges could not be allowed. The statute in question (N.H. RSA 378:30-a) (Supp.1981), has some language very similar to the two clauses of § 393.135, but contains additional, and very clear, language as follows:
At no time shall any rates or charges be based upon any costs associated with construction work if said construction work is not completed....
The New Hampshire case supports the appellant's argument at least as well as it does respondents'. The statute before that court stated in express terms something that our statute does not state. The court was aware of the decision of the Missouri Public Service Commission in this case[8] and pointed to the contrasting position of the Public Utilities Commission of Pennsylvania, in construing a statute which it considered similar to Missouri's.[9] It considered its own statute clearer than Missouri's or Pennsylvania's and said that it had found no other comparable statute. The court also suggested the possibility that the Commission might allow an increase in the utility's rate of return if of the opinion that the forfeiture provisions might discourage investors.
We are also cited to the case of Office of Consumers' Counsel v. Public Utilities Commission, 67 Ohio St.2d 153, 423 N.E.2d 820 (1981), in which the Supreme Court of Ohio held that the Public Utilities Commission exceeded its statutory authority in allowing amortization of the utility's investment in four terminated nuclear power plants. The decision was not based on a statute similar to ours, but rather on the court's interpretation of the basic regulatory statutes of Ohio. It concluded that cancellation costs were not within the term "cost to the utility of rendering the public utility service for the test period." The court recognized (l.c. 826) that its holding was contrary to the overwhelming weight of the decisions of utility regulating commissions of other jurisdictions. This opinion is of little help in construing Proposition One. A contrasting case, under a statute which is likewise quite different from ours is In re Abrams v. New York P.S.C., 104 A.D.2d 135, 483 N.Y.S.2d 785 (3d Dept., 1984).
It is argued that the second clause of § 393.135 dispels any confusion or uncertainty about recovering the cost of abandoned construction, by prohibiting charges for services based on "owning, operating, maintaining, or financing any property before it is fully operational." This clause should be read in the context of the first clause. So read, we believe that it is designed to cover adhesions to the costs of construction, such as interest on borrowed funds, and not to relate to abandoned construction. Respondents point to the word "before," but this word logically connotes costs incidental to construction of facilities which are expected to become operational. It is interesting that the New Hampshire statute contains substantially identical language to that just quoted, in addition to the very clear language, absent from our statute, on which that court placed its principal reliance. The legislature of that state apparently *168 considered the added language significant.
We conclude that Proposition One did not have the purpose, and does not have the effect, of divesting the Commission of the authority to make any allowance at all on account of construction which is definitely abandoned. We base our conclusion on the established practice of allowing such charges, absent a statutory command to the contrary, and on the absence from Proposition One of explicit language dealing with abandoned construction.
Our conclusion by no means dictates the allowance of Union Electric's claims, or even of any part of them. The Commission has taken the position that it utterly lacks power to make any allowance on account of the abandoned Callaway II. We instruct that Proposition One does not disable it. The Commission is now entitled to consider the prudence of the expenditures for Callaway II, the prudence of its abandonment, the accuracy of cost estimates, and the possibility of salvage value or retrieval, along with the other factors which are appropriate in a rate case. We express no opinion as to how it should exercise its authority.
Our conclusion makes it unnecessary to consider Point II, which alleges unconstitutionality of the statutory construction advocated by the respondents. Point III appears to charge that Proposition One is unconstitutional in all events, but we have determined that Proposition One is not an obstacle to the relief Union Electric seeks, and so pretermit a decision on Point III also.
The judgment of the circuit court is reversed and the case is remanded to the Public Service Commission for further proceedings not inconsistent with the views here expressed.
RENDLEN, C.J., and WELLIVER, HIGGINS and GUNN, JJ., concur.
DONNELLY, J., dissents.
BILLINGS, J., dissents in separate opinion.
BILLINGS, Judge, dissenting.
By the stratagem of alleging hypothetical constitutional challenges to the validity of statutes, appellant seeks to bypass appellate review by the court of appeals and confer jurisdiction on this Court in what is nothing more and nothing less than a cost-rate dispute.
The principal opinion tacitly recognizes the lack of our jurisdiction but declines to initially shear the alleged constitutional invalidity of the statutes from the cost-rate issue in order for this Court to retain jurisdiction.
The court of appeals has original jurisdiction to review the judgment of the trial court and we should not encourage litigants to circumvent the appellate process by pseudo constitutional attacks on the validity of a statute or constitutional provision.
I dissent and would transfer the case to the court of appeals.
NOTES
[1] This point might be thought to be lacking in merit in the light of Blue Cross Hospital Service, Inc. of Missouri, v. Frappier, 681 S.W.2d 925 (Mo. banc 1984), handed down after the present appeal was filed, but lack of merit in an argument is not a jurisdictional matter unless the argument may be deemed frivolous.
[2] The "Points to be Argued" are not artistically framed so as to highlight the constitutional questions, but the argument portions of the brief shows clearly what is contended. The argument is sufficient to found our jurisdiction.
[3] Westin Crown Plaza Hotel Co. v. King, 664 S.W.2d 2, 5 (Mo. banc 1984); State Tax Com'n v. Administrative Hearing Com'n, 641 S.W.2d 69, 73 (Mo. banc 1982).
[4] Authority for this proposition stems from Justice Brandeis' concurring opinion in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 341, 346-48, 56 S.Ct. 466, 480, 482-83, 80 L.Ed. 688 (1936).
[5] The Supreme Court of New Hampshire, In re Appeal of Public Service Co. of New Hampshire, 480 A.2d 20 (N.H.1984), recognized that its decision, contrasting somewhat to ours, left substantial questions of constitutional validity unresolved.
[6] In Re Union Electric Company, 20 Mo.P.S.C. (N.S.) 592 (1976).
[7] The Supreme Court of New Hampshire, in handing down a decision that its statutes precluded recovery of the costs of abandoned construction, specifically held that it would not consider constitutional questions in the proceeding then before it, but would not preclude later consideration. Appeal of Public Service Co. of New Hampshire, supra.
[8] In Re Union Electric Co., 25 Mo.P.S.C. (N.S.) 194 (1982).
[9] Pennsylvania Public Utility Comm. v. Duquense Light Co., 52 PUR 4th 644 (1983).