**STATE of Missouri ex rel. SLAH, L.L.C., Respondent,**

v.

**CITY OF WOODSON TERRACE, Missouri, a municipal corporation, et al., Appellants.**

No. SC 91802.

Supreme Court of Missouri, En Banc.

Aug. 14, 2012.

Kevin M. O'Keefe and Edward J. Sluys of Curtis, Heinz, Garrett & O'Keefe PC, St. Louis; Frank J. Vatterott of Vatterott, Shaffar & Dolan PC, Maryland Heights, for the city.

David R. Bohm and Laura G. Long of Danna McKittrick PC, St. Louis, for SLAH.

PATRICIA BRECKENRIDGE, Judge.

This case involves a challenge to the imposition of municipal taxes on SLAH, L.L.C., a business entity that owns a hotel located in the city of Woodson Terrace. The city appeals from the declaratory judgment entered against it on SLAH's claim that the city is prohibited by section 94.270.3, RSMo 2010,[1] from imposing a hotel license tax rate in excess of $13.50 per room, per year. The city claims that the judgment should be reversed because the statute is an unconstitutional "special law" under article III, section 40 of the Missouri Constitution. The city also claims that sections 94.270.3 and .6, RSMo

1. Unless indicated otherwise, all statutory references are to RSMo Supp.2004.

Supp.2010, which restrict the amount by which a city can increase its tax rate, violate the uniformity requirement of article IV, section 15 of the Missouri Constitution. Because SLAH has an adequate remedy at law under section 139.031, the trial court erred in entering a declaratory judgment against the city. The judgment is reversed, and the cause is remanded.

## Factual and Procedural Background

In January 2004, the city's board of aldermen enacted Ordinance 1606, which imposes a license tax on hotels and motels at a rate of $0.85 per day on each room occupied for a fee by transient guests. Voters approved the ordinance April 14, 2004, and it became effective July 1, 2004. Prior to the enactment of Ordinance 1606, Woodson Terrace's hotel and motel license tax rate was $10 per room, per year.

During the 2004 legislative session, the General Assembly enacted subsection 3 of section 94.270, which became effective August 23, 2004. Section 94.270.3, RSMo Supp.2010, prohibits fourth-class cities— cities with a population between 4,100 and 4,200 inhabitants and located within a charter county with 1 million or more inhabitants—from levying or collecting a hotel or motel license fee in excess of $13.50 per room, per year. Under the statute, if the license tax rate of a city exceeds $13.50 per room, per year, the tax rate automatically is reduced to $13.50 per room, per year. The statute specifically states:

> Notwithstanding any other law to the contrary, no city of the fourth classification with more than four thousand one hundred but less than four thousand two hundred inhabitants and located in any county with a charter form of govern-

ment and with more than one million inhabitants shall levy or collect a license fee on hotels or motels in an amount in excess of thirteen dollars and fifty cents per room per year. No hotel or motel in such city shall be required to pay a license fee in excess of such amount, and any license fee in such city that exceeds the limitation of this subsection shall be automatically reduced to comply with this subsection.

Section 94.270.3, RSMo, Supp.2010. According to the 2000 census data, St. Louis County is the only Missouri county with 1 million inhabitants and Woodson Terrace is the only city within that county to have between 4,100 and 4,200 inhabitants. U.S. Census Bureau, Profile of General Demographic Characteristics: 2000, available at http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk [2] and http://censtats.census.gov/data/MO/1602980962.pdf.

During the 2005 legislative session, the General Assembly enacted subsection 6 of section 94.270. By its terms, section 94.270.6, RSMo Supp.2010, provides that no fourth-class city may increase its hotel or motel license tax by more than 5 percent per year and that the total tax levied cannot exceed the greater of either: (1) 0.125 percent of the gross revenue of the hotel or motel; or (2) the license tax rate for the hotel or motel as it existed on May 1, 2005. Section 94.270.6, RSMo Supp.2010, reads:

> Any city under subsections 1, 2, and 3 of this section may increase a hotel and motel license tax by five percent per year but the total tax levied under this section shall not exceed the greater of:

---

**2.** The 2010 census data indicates that St. Louis County no longer has a population of more than 1 million inhabitants, with 998,954 inhabitants. U.S. Census Bureau, Profile of

General Population and Housing Characteristics: 2010, available at http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk.

(1) One-eighth of one percent of such hotels' or motels' gross revenue; or

(2) The business license tax rate for such hotel or motel on May 1, 2005.

Each year, SLAH has applied for a business license with the city to operate its hotel, the St. Louis Airport Hilton Hotel. For fiscal years 2005 through 2007, the city sent SLAH a business license application, which required payment of $13.50 per room, per year, consistent with section 94.270.3, RSMo Supp.2010. SLAH filled out and submitted the forms along with a payment in the amount of $5,305.50 each year. Each year, SLAH received a business license from the city.[3]

In 2008, SLAH applied for a business license in the same manner as it had in the past, using the $13.50 per room calculation. The city collector returned the check sent by SLAH and stated that the city sent the wrong application form. The collector enclosed a new application form that set the hotel license tax rate at $0.85 per room, per day, consistent with Ordinance 1606. In later correspondence, the city explained that its increase in the hotel license tax rate was permissible on the ground that sections 94.270.3 and .6, RSMo Supp.2010, both constituted special laws in violation of article III, section 40.

SLAH filed a petition for declaratory judgment, injunction, mandamus, or prohibition to contest the legality of the city's increased hotel license tax rate of $0.85 per room, per day under Ordinance 1606. In response to the suit, the city enacted Ordinance 1719 on December 20, 2007, to reduce the hotel business license tax to $0.32 per occupied room, per day and to permit yearly increases of 5 percent up to the statutory maximum. Notwithstanding

the decrease in the hotel license tax rate under Ordinance 1719, the city's hotel license tax still exceeded the maximum rate of $13.50 per room, per year.

A bench trial was held, and the trial court ruled that the city is prohibited by section 94.270.3, RSMo Supp.2010, from charging a hotel license tax rate in excess of $13.50 per room, per year. The trial court also ruled that the city is prohibited by section 94.270.6, RSMo Supp.2010, from charging a tax rate exceeding 0.125 percent of the hotel's gross revenue or increasing the license tax rate by more than 5 percent per year. Under these provisions, the trial court found Ordinance 1719 to be invalid and reduced the tax rate under Ordinance 1606 to $13.50 per room, per year. Furthermore, the trial court issued a writ of mandamus and a writ of prohibition. The writ of mandamus ordered the city to issue SLAH a business license for fiscal years 2008 and 2009, and the writ of prohibition prevented the city from charging SLAH more than $13.50 per room, per year or collecting any penalty or interest from SLAH for late payment of the taxes.

The city filed a motion for a new trial, which the trial court overruled. The city appealed directly to this Court on the ground that sections 94.270.3 and .6, RSMo Supp.2010, are unconstitutional under article III, section 40 and article VI, section 15. This Court ordered the city's appeal transferred to the court of appeals. After opinion by the court of appeals, this Court then granted transfer. Mo. Const. art. V, sec. 10.

### Standard of Review

■ A trial court's determination of authority to hear a case is generally a

---

**3.** There is no controversy regarding the business license taxes paid by SLAH for the years 2005 and 2006, when the city supplied business license applications with the incorrect rate of $13.50 per room, per year.

question of fact that will not be reversed on appeal absent an abuse of discretion. *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003). In this case, however, because the facts are uncontested, the determination of authority to hear the case is purely a question of law that is reviewed *de novo. Id.* Furthermore, this Court will avoid deciding a constitutional question if the case can be resolved fully without reaching it. *Ross v. State*, 335 S.W.3d 479, 480 (Mo. banc 2011); *State ex rel. Union Electric Co. v. Pub. Serv. Comm'n*, 687 S.W.2d 162, 165 (Mo. banc 1985).

## Discussion

The city presents three claims on appeal. First, the city claims that the trial court erred in entering declaratory judgment on SLAH's claims because there is an adequate remedy at law under section 139.031. Next, the city claims that the trial court erred in finding that section 94.270.3, RSMo Supp.2010, prohibits Woodson Terrace from imposing a hotel license tax rate in excess of $13.50 per room, per year because the statute violates the uniformity requirement in article VI, section 15 and is a special law in violation of article III, section 40. Lastly, the city claims that the trial court erred in finding that Ordinance 1719, which reduced the city's hotel license tax rate to $0.32 per occupied room, per day, is void because section 94.270.6, RSMo Supp.2010, violates the uniformity requirement of article VI, section 15. Because there is an adequate remedy at law in this case, this Court does not reach the merits of the city's constitutional challenges to the validity of sections

94.270.3 and .6, RSMo Supp.2010. *See Ross*, 335 S.W.3d at 480.

 Under section 527.010, RSMo 2000, trial courts are authorized to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 527.020, RSMo 2000, expressly provides that trial courts are authorized to determine the validity of a statute or ordinance in a declaratory judgment action.[4] *Tietjens v. City of St. Louis*, 359 Mo. 439, 222 S.W.2d 70, 72 (1949). Declaratory judgment actions under these provisions are "designed to supply a deficiency in our remedial proceedings and are not intended to be a substitute for all existing remedies." *Harris v. State Bank & Trust Co. of Wellston*, 484 S.W.2d 177, 179 (Mo.1972). The actions are *sui generis* in nature—neither legal nor equitable—but because their historical affinity is equitable, equitable principles govern such actions. *See Gurniak v. Liszewski*, 411 S.W.2d 84, 86 (Mo.1967); *see also Van Dyke v. LVS Building Corp.*, 174 S.W.3d 689, 692 (Mo.App.2005). Consequently, to maintain a declaratory judgment action, there must be no adequate remedy at law. *Levinson v. State*, 104 S.W.3d 409, 411 (Mo. banc 2003).

A general remedy at law is provided by section 139.031, which establishes a procedure under which a taxpayer can adjudicate the legality of an imposed tax. Section 139.031 states:

1. Any taxpayer may protest all or any part of any current taxes assessed against the taxpayer, except taxes collected by the director of revenue of Missouri. Any such taxpayer desiring to pay any current taxes under protest or

---

4. Section 527.020, RSMo 2000, states, in pertinent part: "Any person ... whose rights, statutes or other legal relations are affected by a statute, [or] municipal ordinance ... may have determined any question or con-
struction or validity arising under the ... statute, [or] ordinance ... and obtain a declaration of rights, status or other legal relations thereunder."

while paying taxes based upon a disputed assessment shall, at the time of paying such taxes, make full payment of the current tax bill before the delinquency date and file with the collector a written statement setting forth the grounds on which the protest is based. The statement shall include the true value in money claimed by the taxpayer if disputed.

To challenge the legality of an imposed tax, section 139.031.1 requires the taxpayer to pay the taxes in protest by filing a written statement of protest stating the grounds for the protest and the amount claimed, if disputed. The protested taxes are held in a separate account that the collector invests. Sections 139.031.2 and .7. The taxpayer then can file suit in circuit court to initiate non-jury civil proceedings against the collector to recover the protested taxes. Section 139.031.2. If the taxpayer is entitled to a refund, the court will order the collector to refund the protested taxes along with any interest accrued thereon. Section 139.031.4.

The remedy afforded by section 139.031 is generally the exclusive remedy for a taxpayer seeking to adjudicate the legality of an imposed tax. *See B & D Inv. Co. v. Schneider*, 646 S.W.2d 759, 764–65 (Mo. banc 1983) (finding section 139.031 to be the exclusive remedy on the ground that administrative remedies are ordinarily exclusive when adequate); *see also Council House Redevelopment Corp. v. Hill*, 920 S.W.2d 890, 891 (Mo. banc 1996); *Buck v. Leggett*, 813 S.W.2d 872, 877 (Mo. banc 1991). The generally exclusive nature of section 139.031 advances both the purpose of the statute and the public policy underlying its enactment. The essential purpose of section 139.031 is to "furnish an adequate and sufficient remedy to the taxpayer and, at the same time, to provide an expeditious method by which the various branches of government affected can obtain the revenue necessary for their maintenance without protracted delay. . . ." *B & D Inv. Co.*, 646 S.W.2d at 762 (quoting C.J.S. Taxation Section 638 (1974)). Furthermore, as a matter of public policy, "the law discourages suits for the purpose of recovering taxes alleged to have been illegally levied and collected; and it is for this reason of policy that the remedy of a refund, including [the] time in which it must be filed, is the exclusive remedy." *Charles v. Spradling*, 524 S.W.2d 820, 823 (Mo. banc 1975).

Under the circumstances of this case, SLAH is afforded an adequate remedy under section 139.031. Had SLAH paid the disputed taxes under protest and brought suit pursuant to section 139.031, it would place before a court the same issues that now are claimed in the declaratory judgment action. The requirement that the taxpayer first pay the disputed taxes prior to challenging the legality of the tax itself does not make the provisions of section 139.031 inadequate.[5] If a taxpayer is entitled to a refund of taxes paid under protest due to an illegal tax, the taxpayer receives the full refund of the illegally collected tax as well as the interest earned on it during the adjudication. Section 139.031.4.

This case is analogous to the facts in *Lane v. Lensmeyer*, 158 S.W.3d 218, 222

---

**5.** Insofar as SLAH asserts that the business license tax under Ordinance 1606 is unconstitutionally confiscatory in that "the license tax is fixed so high as to be virtually confiscatory or prohibitive of legitimate occupation or privilege," *Thunder Oil Co. v. City of Sunset Hills*, 349 S.W.2d 82, 88 (Mo. banc 1961), it raises the issue for the first time on appeal.

"If not raised at the first opportunity in the circuit court, a constitutional claim is waived and cannot be raised here." *State v. Fassero*, 256 S.W.3d 109, 117 (Mo. banc 2008). Furthermore, SLAH does not assert that it lacks the ability to pay under protest pursuant to section 139.031 due to a lack of funds.

(Mo. banc 2005). In *Lane,* this Court considered the issue of whether taxpayers could maintain a declaratory judgment action to challenge a tax levy they claimed violated a statute. *Id.* at 221–22. Noting the general rule that "declaratory judgment is inappropriate when the issue can be raised by some other means," this Court found that the taxpayers were not entitled to maintain their declaratory judgment action because section 139.031 gave them an adequate remedy at law to raise their claim. *Id.* at 223.

This case is distinguishable from situations in which section 139.031 is not the exclusive remedy for the taxpayer, such as when the remedy under section 139.031 does not protect the constitutional rights of the taxpayer adequately.[6] For instance, a taxpayer can maintain a declaratory judgment action to contest the legality of an increased assessed valuation of property when the taxpayer was deprived of administrative remedies due to the assessor's failure to give the required statutory notice. *See John Calvin Manor, Inc. v. Aylward,* 517 S.W.2d 59 (Mo.1974); *see also School Dist. of Kansas City v. State,* 317 S.W.3d 599, 606 n. 6 (Mo. banc 2010); *Crest Commc'ns v. Kuehle,* 754 S.W.2d 563 (Mo. banc 1988); *General Motors Corp. v. City of Kansas City,* 895 S.W.2d 59 (Mo. App.1995); *Ingels v. Noel,* 804 S.W.2d 808 (Mo.App.1991). The constitutional implications of requiring section 139.031 to be the exclusive remedy under the circumstance in *John Calvin Manor, Inc.* and similar cases are not present in this case.

In *John Calvin Manor, Inc.,* the county assessor raised the assessed valuation of the taxpayer's land from $500 to $225,500. *Id.* at 60–61. While the taxpayer could appeal the assessment to the board of equalization under section 137.385, the taxpayer did not receive the requisite notice from the assessor until after the time period allowed for appeal. *Id.* at 61. The taxpayer brought action directly in the circuit court, which ordered the assessor to reduce the assessed valuation of the taxpayer's property to $500. *Id.* The assessor appealed, claiming that section 139.031 precluded equitable relief from the circuit court because it provided the taxpayer an adequate, exclusive remedy. *Id.* This Court rejected the assessor's claim, stating that the "consequence of failing to give the required notice places the taxpayer in a markedly different position than if proper notice is given and bears directly on the adequacy of the remedies [under section 139.031]." *Id.* This Court recognized that, unlike appeal to the board of equalization, judicial review under section 139.031 does not give the circuit court discretionary authority to "fix the value or assess the property at any specific amount." *Id.* at 63. Because section 139.031 did not afford sufficient relief as did the administrative remedy of which the taxpayer was deprived, the taxpayer could pursue equitable remedies. *Id.* at 64.

This case involves neither the valuation of property for tax purposes nor the deprivation of an administrative remedy due to the assessor's failure to provide the required statutory notice, as in *John Calvin Manor, Inc.* The tax the city imposed on SLAH is a business license tax based on the number of rooms occupied by transient guests each day. It is not based on an assessed value of the hotel property that is

---

6. This is not to say that section 139.031 is inadequate in cases in which the constitutional validity of the tax is questioned. In *Westglen Village Associates v. Leachman,* this Court stated with regard to section 139.031 that "statutorily provided administrative procedures must be utilized exclusively, and must be followed to exhaustion even where constitutional claims are raised." 654 S.W.2d 897, 900 (Mo. banc 1983). Section 139.031, therefore, is adequate to adjudicate a taxpayer's claim that a tax is unconstitutional.

reviewable by an administrative agency. Furthermore, under the pay-under-protest provisions in section 139.031, the trial court has the full authority to determine the validity of Ordinance 1606 and order the refund of the protested taxes, if warranted. *See* section 139.031.4 ("[A]fter determination of the issues, the court shall make such orders as may be just and equitable to refund the taxpayer all or any part of the current taxes paid under protest...."). SLAH is not deprived of an administrative remedy that would otherwise be available. In the absence of these factors, this Court in *John Calvin Manor, Inc.* recognized that "a suit under sec[tion] 139.031 would have placed the same issues before the court as were decided in this case, and insofar as providing a proceeding for the adjudication of these issues is concerned, such a proceeding would be wholly adequate." 517 S.W.2d at 62. A proceeding under section 139.031, accordingly, would be adequate.

### Conclusion

The remedy afforded to SLAH under section 139.031 is adequate under the circumstances. Accordingly, it is the exclusive remedy for challenging the legality of Woodson Terrace's hotel license tax rates. Because a declaratory judgment action is improper when an adequate remedy exists at law, the trial court erred in entering judgment in favor of SLAH. *See Lane,* 158 S.W.3d at 223. This Court reverses the decision of the trial court and remands the cause to the trial court.

TEITELMAN, C.J., RUSSELL, FISCHER and STITH, JJ., and HAYES, Sp.J., concur.

DRAPER, J., not participating.