Laura Denvir Stith, Judge
Appellant Marilyn Hink appeals the Scott County circuit court's judgment dismissing her medical malpractice case without prejudice for failure to file an "affidavit of merit" under section 538.225.[1] She argues section 538.225's affidavit requirement violates Missouri's open courts provision as well as her right to trial by jury and the principle of separation of powers under the Missouri Constitution. See Mo. Const. art. I, § 14 ; id. art. I, § 22(a); id. art. II, § 1. This Court reaffirms its decision in Mahoney v. Doerhoff Surgical Services, Inc., 807 S.W.2d 503 (Mo. banc 1991), upholding the constitutional validity of section 538.225's requirement of an affidavit stating the plaintiff or plaintiff's attorney has the opinion of a legally qualified medical provider on the issues of breach of the standard of care and causation of damages.
This Court declines to adopt Ms. Hink's argument that revisions to the statute since Mahoney require a single expert be relied on to support all theories of causation, standard of care, and damages even when multiple experts will be used at trial. This Court need not reach the question posed by Ms. Hink of whether the statute restricts the definition of "legally qualified health care provider" in a way that disqualifies experts who would otherwise be able to make a submissible case at trial from supplying the opinion supporting an affidavit. Not only is such a serious constitutional problem unlikely to arise in light of this Court's broad interpretation of what constitutes "substantially the same *337 specialty" in Spradling v. SSM Health Care St. Louis, 313 S.W.3d 683 (Mo. banc 2010) , but in any event, the issue is not presented here. Ms. Hink's case was dismissed because she failed to file any affidavit, not because she offered multiple affidavits or because the judge believed the medical opinions were not offered by persons in substantially the same specialty as experts who would have offered sufficient evidence as to breach of the standard of care, causation, and damages to make a submissible case at trial. Accordingly, this Court affirms.
I. FACTUAL AND PROCEDURAL BACKGROUND
On May 7, 2013, Dr. Loring Helfrich performed a scheduled surgery to remove Marilyn Hink's gall bladder. Ms. Hink's right hepatic duct was allegedly injured during the procedure, causing bile to leak into the surgical field. Over the next several months, Ms. Hink required additional medical attention and a second surgery to repair the injured duct. On May 5, 2015, just less than two years after her surgery, Ms. Hink filed a petition in the Scott County circuit court alleging (1) Dr. Helfrich was negligent in injuring her hepatic duct during the May 7 surgery and (2) the affidavit requirement of House Bill 393, contained in section 538.225, unconstitutionally barred her access to the courts to pursue her malpractice claim.[2]
In a medical malpractice action, section 538.225 requires the plaintiff or plaintiff's attorney to file an affidavit, often called an "affidavit of merit," stating "that he or she has obtained the written opinion of a legally qualified health care provider" that the defendant breached the applicable standard of care and this failure directly caused or contributed to cause plaintiff's damages. The affidavit must be filed within 90 days of filing a petition unless the circuit court grants an extension. Id.
Ms. Hink's first petition was dismissed without prejudice on September 24, 2015. Section 537.100 permits the refiling of a petition within one year of dismissal even when the statute of limitations may have run. Lang v. Goldsworthy, 470 S.W.3d 748, 752 n.6 (Mo. banc 2015) . On September 21, 2016, Ms. Hink refiled her petition. She sought, and was granted, a 90-day extension to file her affidavit, as permitted by section 538.225. This made the affidavit due no later than March 20, 2017. When Ms. Hink failed to file an affidavit by that date, Dr. Helfrich filed a motion to dismiss for failure to timely file an affidavit of merit. Ms. Hink conceded she failed to file the required affidavit but asked the court to overrule the motion to dismiss on the ground that section 538.225, as revised in 2005, violates a plaintiff's right to jury trial, Missouri's open courts provision, and separation of powers. The circuit court again dismissed the petition without prejudice.
Although a dismissal without prejudice generally is not appealable because it is not an adjudication on the merits, when an action cannot be refiled or when the litigant chooses to stand on the "right under the state and federal constitutions to maintain the action unencumbered by [the section 538.225 affidavit] requirement," then the dismissal may be appealed because "the dismissal without prejudice sanction for failure to file the health care *338 provider affidavit is a dismissal of the action, and not merely the petition." Mahoney, 807 S.W.2d at 506. Ms. Hink properly filed her appeal in this Court because she attacks the validity of a Missouri statute. Mo. Const. art. V, § 3 .
II. STANDARD OF REVIEW
"Challenges to the constitutional validity of a state statute are subject to de novo review." State v. Shanklin, 534 S.W.3d 240, 241 (Mo. banc 2017), quoting, Hill v. Boyer, 480 S.W.3d 311, 313 (Mo. banc 2016). "Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision." Hill v. Boyer, 480 S.W.3d 311, 313-14 (Mo. banc 2016) . The party bringing the constitutional challenge "has the burden of proving the act clearly and undoubtedly violates the constitutional limitations." State v. Vaughn, 366 S.W.3d 513, 517 (Mo. banc 2012) . "This Court also reviews de novo questions ... about a party's standing to raise such constitutional questions." Brehm v. Bacon Twp., 426 S.W.3d 1, 4 (Mo. banc 2014) .
III. STATUTORY FRAMEWORK OF SECTION 538.225
Section 538.225.1 requires that the plaintiff or plaintiff's counsel
shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.
(Emphasis added). When first enacted, the statute further provided, if no such affidavit is filed within 90 days, "the court may , upon motion of any party, dismiss the action against such moving party without prejudice." § 538.225.5, RSMo 1985 (emphasis added). The statute was amended in 2005 to provide the court "shall" dismiss the action if an affidavit is not filed. The 2005 amendment also added, for the first time, language defining a "legally qualified health care provider" as one licensed "in the same profession as the defendant and either actively practicing or within five years of retirement from actively practicing substantially the same specialty as the defendant." § 538.225.2, RSMo 2005 .
Ms. Hink's sole point relied on states as follows: "The trial court erred in sustaining Dr. Helfrich's Motion to Dismiss for Failure to File Healthcare Affidavit pursuant to RSMo. § 538.225 because RSMo. § 538.225 is unconstitutional in that there are circumstances where it is impossible for the plaintiff to comply with the requirements of RSMo. § 538.225." As the separate opinion notes, Ms. Hink's point is an abstract statement of law and is too general and vague, as is her argument regarding the alleged violation of the right to jury trial and separation of powers. But this Court prefers to dispose of cases on the merits if it can discern the argument being made. See Pub. Water Supply Dist. No. 2 of Jackson Cty. v. Alex Bascom Co., 370 S.W.2d 281, 291 (Mo. 1963) ; see also Lueker v. Mo. W. State Univ., 241 S.W.3d 865, 867 (Mo. App. 2008) ("An appellate court prefers to dispose of a case on the merits rather than to dismiss an appeal for deficiencies in the brief."). This Court can discern from the argument section of Ms. Hink's brief and oral argument, from the amicus brief, and from her citation to this Court's discussion of similar issues in Mahoney, 807 S.W.2d at 503 , that her key argument is section 538.225 violates the open courts provision of Missouri's constitution *339 because the post-2005 definition of "legally qualified healthcare provider" arbitrarily and unreasonably restricts a plaintiff's access to the courts in that it leads to dismissal of a case for failure to file an affidavit even if the plaintiff otherwise would have made a submissible case.[3]
IV. THIS COURT REAFFIRMS THE CONSTITUTIONAL VALIDITY OF REQUIRING AN AFFIDAVIT FROM A QUALIFIED HEALTH CARE PROVIDER
Mahoney is directly on point and controlling here. In Mahoney , the plaintiffs' malpractice claim was dismissed after they failed to submit an affidavit of merit within the time limits set by section 538.225. 807 S.W.2d at 505. The plaintiffs argued "the 'screening' process of § 538.225 that requires 'a health care provider's written report' not only violates the guarantee that courts be open 'without denial or delay[ ]' but also imposes an unreasonable precondition to free access to the courts" and so to the right to trial by jury. Id. at 509 .
This Court disagreed, holding the right of access to the courts "means simply the right to pursue in the courts the causes of action the substantive law recognizes." Id. at 510 . In medical malpractice actions, the substantive law requires a plaintiff to "prove by a qualified witness that the defendant deviated from an accepted standard of care. Without such testimony, the case can neither be submitted to the jury nor be allowed to proceed by the court." Id. And, Mahoney held, the affidavit requirement is consistent with this substantive law because the purpose of requiring an "affidavit of merit" under section 538.225 is to prevent frivolous medical malpractice lawsuits when a plaintiff cannot put forth adequate expert testimony to support their claims. Id. For this reason, this Court held section 538.225 's affidavit requirement "denies no fundamental right, but at most merely [re]design[s] the framework of the substantive law to accomplish a rational legislative end," id. at 510 , of "protect[ing] the public and litigants from the cost of ungrounded medical malpractice claims," id. at 507 (citation and quotations omitted).
For similar reasons, this Court rejected the argument that section 538.225 's affidavit requirement violates the right to trial by jury, stating "it is not the 'screening' procedure of § 538.225 that impedes the progression of [a plaintiff's] petition to the jury ... but their failure to meet a requirement of substantive law." Id. at 508 . Mahoney noted Rule 55.03 "requires of the party or attorney the duty of reasonable inquiry that the petition or other paper filed 'is well grounded in fact and is warranted by existing law.' " Id. In the same way, Mahoney held, the affidavit requirement simply ensures "that a party who sues for the malpractice of a health care provider has by a reasonable inquiry come to a reasonable belief that the petition is warranted by the proof and the law." Id. Mahoney also compared the affidavit requirement to traditionally recognized procedures such as a directed verdict or summary judgment, and rejected the jury trial challenge because the affidavit requirement simply "parallels the practice already prescribed for all civil actions, and is hardly *340 more onerous to the right to trial by jury." Id.
This Court also rejected the Mahoney plaintiffs' argument the affidavit requirement "invades the judicial function by having a health care provider rather than a judicial officer determine the validity of [a plaintiff's] cause of action." Id. at 510 . Rather, this Court held dismissing a claim for lack of compliance with section 538.225"is a determination that under the substantive law of medical malpractice the petition cannot succeed, and so is frivolous. It is a judge that decides that the case may not proceed, not a health care provider." Id.
Ms. Hink does not dispute Mahoney so held nor does she suggest it should be overruled. Rather, in oral argument, and implicit in the argument section of her brief, is her suggestion Mahoney can be distinguished because, at the time it was decided, section 538.225 simply said a judge "may" dismiss a case for the failure to file an affidavit of merit, whereas now, as a result of a 2005 amendment, section 538.225 provides the judge "shall" dismiss the case if plaintiff fails to file an affidavit of merit. Mahoney did not base its ruling on the statute's use of the word "may," however, and this Court does not agree the change from "may" to "shall" affects the open courts and jury trial rights. While previously a judge did not have to dismiss the suit when an affidavit was not provided, the trial judge in Mahoney did dismiss the suit precisely for that failure. The analysis in Mahoney , therefore, focused on whether dismissal for failure to file an affidavit constitutes denial of the right to jury trial or violates the open courts provision or separation of powers principles, just as is alleged here. Accordingly, Mahoney 's analysis is directly applicable without regard to the change from "may" to "shall."
Ms. Hink argues another change in the statute adopted in 2005 raises an issue not addressed in Mahoney and dispositive here. In addition to changing "may" to "shall," the 2005 amendment to section 538.225 for the first time defined "legally qualified healthcare providers" to include only those who practice in "substantially the same specialty" as the defendant.
Ms. Hink argues this new limitation on who can provide the requisite opinion supporting an affidavit of merit imposes a stricter burden on the plaintiff than is required to prove a prima facie case of negligence at trial. At trial, a medical malpractice plaintiff bringing a claim of negligence can make a prima facie case through expert testimony from any qualified expert, regardless of whether the expert practices in substantially the same specialty as the defendant. See Klotz v. St. Anthony's Med. Ctr., 311 S.W.3d 752, 761 (Mo. banc 2010) (rejecting the notion that proving standard of care "requires that expert testimony at trial be limited to persons in the defendant's specialty"). This means a plaintiff might be out of court because he or she is unable to provide an affidavit of merit from a physician in substantially the same specialty even though the plaintiff could make a submissible case if the affidavit requirement did not exist. But this argument fails to recognize this Court has held a "health care provider may have a different board certification but may practice 'substantially the same specialty' because of an expertise in the medical procedure at issue. Many medical procedures are not peculiar to one board certification." Spradling, 313 S.W.3d at 689 . In most cases, therefore, this Court's interpretation of "substantially" the same specialty, which includes persons qualified by expertise rather than board certification, means the same experts would qualify under either standard.
*341 Ms. Hink posits there nonetheless may be some instances in which an expert could not arguably be considered even "substantially" in the same specialty yet would be considered a qualified trial expert. She suggests this may be the case, for instance, in the case of the family doctor, who may not be considered a specialist of any sort, or in the case of a failure by such a doctor to diagnose cancer, in which case an oncologist might need to be called, and the latter would be in a different specialty.
As just noted, under Spradling, when the expert has gained the requisite expertise through experience, then it would not matter that he or she practiced in different fields. Ms. Hink suggests there may nonetheless be exceptions, particularly in cases that are so complex the plaintiff may need to rely on unique or multiple experts in different fields at trial, including fields not related to that of the defendant's practice, to show damages or to support a complex theory of causation. Some of those experts would likely be in different specialties from the defendant. Even worse, Ms. Hink argues, compliance with the statute may prohibit her from relying on multiple experts at all, for she reads its use of the phrase "legally qualified health care provider" to mean a plaintiff must rely on a single health care provider to support standard of care, causation, and damages of all types and all theories. This, she says, is an arbitrary additional requirement and, in a complex case, may require dismissal of an otherwise meritorious case.
These indeed are issues different than those rejected in Mahoney. There, the Court found the affidavit requirement constitutional because it simply required plaintiffs to show what the substantive law already requires-there exists "a qualified witness [who will attest] that the defendant deviated from an accepted standard of care." 807 S.W.2d at 510 . This did not violate the right to jury trial or open courts or the separation of powers because, "Without such testimony, the case can neither be submitted to the jury nor be allowed to proceed by the court." Id . Mahoney did not suggest the legislature could add a requirement that would preclude an otherwise meritorious, submissible case from going to trial because of the inability to find an expert to testify to a matter not required to be shown to submit a cause of action.
Here, however, Ms. Hink has failed to show section 538.225 imposes such requirements. Nothing in section 538.225 provides the affidavit may rely on only a single expert opinion on all issues. Section 538.225 simply provides a plaintiff "shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider" as to the defendant's breach of the standard of care and causation. While the statute uses the term "a legally qualified health care provider," Missouri law expressly provides the singular includes the plural unless otherwise stated.[4] Any requirement in this case that the entire breach of standard of care and causation be proven by a single expert appears to have been self-imposed.
Further, nothing in section 538.225 provides every single element of damage claimed must be supported in the opinion that forms the basis of the affidavit, as Ms.Hink *342 suggests she was unable to accomplish. Neither does Mahoney support such a reading of the statute. To the contrary, Mahoney says the purpose of the affidavit requirement is to allow the early dismissal of frivolous claims. 807 S.W.2d at 507 . That purpose necessarily is served if the plaintiff files an affidavit stating he or she has the opinion of a qualified health care provider that the defendant failed to meet the standard of care, caused the injury, and damages resulted. Whether every theory or every claimed item of damage later is found to be submissible need not be determined in deciding whether the action itself is frivolous, and that is what the affidavit requirement addresses.
Finally, and most importantly, even were Ms. Hink's unduly labored reading of the statute a correct one, the record simply does not show her case was dismissed because her affidavit showed she could not obtain an opinion from a physician in the right specialty, or because the affidavit showed she obtained only a single expert opinion addressing some but not all her claims of liability or damages. Rather, the record reveals she failed to file any affidavit at all. While Ms. Hink says this was because she feared her affidavit would be rejected if filed, this Court can act only based on the record before it, not based on hypothetical facts not supported by the record. Harris v. Consol. Sch. Dist. No. 8 C, Dunklin Cty., 328 S.W.2d 646, 654 (Mo. banc 1959) ("An advisory decree upon hypothetical facts is improper."). Further, "Generally, only those adversely affected by a statute have standing to challenge the constitutionality of the statute." Brehm, 426 S.W.3d at 5 .[5] Ms. Hink is not affected by the alleged deficits in the statute she argues exist, and this Court, therefore, declines to further discuss the merits of her hypothetical constitutional arguments.
V. CONCLUSION
For these reasons, the circuit court's judgment is affirmed.
Draper, Russell, Powell and Breckenridge, JJ., concur;
Fischer, C.J., files separate opinion:
Wilson, J., concurs in opinion of Fischer, C.J.
Zel M. Fischer, Chief Justice
SEPARATE OPINION
Ms. Hink failed to raise her constitutional claims at the earliest opportunity and her sole point relied on violates Rule 84.04 and preserves nothing for appellate review. Because Ms. Hink failed to preserve her constitutional claims, the appeal should be dismissed.
The Rule 84.04 briefing rules are mandatory. Storey v. State , 175 S.W.3d 116, 126 (Mo. banc 2005). Rule 84.04(d)(1) requires an appellant's brief to contain a "Point Relied On" identifying a claim of reversible error, concisely stating the legal reasons for the claim, and summarily explaining why the stated legal reasons support the claim of reversible error. The principal opinion acknowledges Ms. Hink's point relied on violates Rule 84.04 because it is an abstract statement of law that fails to explain a claim of reversible error. The principal opinion further acknowledges Ms. Hink's brief fails to set forth any discernible argument that the § 538.225 affidavit requirement violates the right to trial by *343 jury and separation of powers. Because Ms. Hink's improper briefing preserves nothing for appellate review, her allegations of error "shall not be considered in any civil appeal." Rule 84.13(a). Despite the clear mandate of Rule 84.13(a), the principal opinion reviews Ms. Hink's unpreserved constitutional claims in several pages of unnecessary dicta based on admittedly deficient briefing.
Furthermore, for decades, and for prudential reasons, this Court has held fast to the principle that "[a] court will avoid the decision of a constitutional question if the case can be fully determined without reaching it." State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n , 687 S.W.2d 162, 165 (Mo. banc 1985). This Court has recently and repeatedly reaffirmed this important principle of not reaching constitutional issues unless necessarily required. Brainchild Holdings, LLC v. Cameron , 534 S.W.3d 243, 246 (Mo. banc 2017) ; Lang v. Goldsworthy , 470 S.W.3d 748, 751 (Mo. banc 2015) ; State ex rel. SLAH, L.L.C. v. City of Woodson Terrace , 378 S.W.3d 357, 361 (Mo. banc 2012). This long-standing principle of judicial restraint is inherent in the constitutional separation of powers and grounded in institutional prudence. It recognizes the power to determine the validity of a legislative enactment "is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility." Ashwander v. Tenn. Valley Auth. , 297 U.S. 288, 345, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (internal quotation omitted). The principal opinion stands these settled principles on their head and decides fundamental constitutional issues after concluding the issues are not preserved for this Court's review. Doing so requires this Court to improperly assume an advocacy role and needlessly risks foreclosing potentially legitimate constitutional arguments. I cannot concur in this approach and reserve the option of deciding these fundamental constitutional issues when they are properly preserved, adequately briefed, and presented to this Court.[1]
The principal opinion offers no persuasive reason to ignore this Court's rules and long-standing principles of judicial precedence and restraint. The principal opinion cites Public Water Supply District No. 2 of Jackson County v. Alex Bascom Co., 370 S.W.2d 281, 291 (Mo. 1963), to excuse Ms. Hink's failure to properly brief and preserve her constitutional claims. Bascom involved the valuation of property taken by eminent domain, not the constitutional validity of a state statute. Bascom does not support the principal opinion's determination to gratuitously decide fundamental issues of state constitutional law based on deficient briefing.
The principal opinion asserts plain error review is warranted, but plain error review rarely is granted in civil cases. Mayes v. St. Luke's Hosp. of Kansas City , 430 S.W.3d 260, 269 (Mo. banc 2014). In civil cases, Rule 84.13(c) provides for discretionary review of unpreserved "[p]lain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The principal opinion's conclusion that § 538.225 is constitutional precludes a finding of manifest injustice permitting *344 plain error review pursuant to Rule 84.13(c).
The principal opinion's error is compounded by the fact Ms. Hink waived her right to trial by jury and separation of powers claims by failing to properly assert them in the circuit court. To preserve a constitutional claim, a party must
(1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.
Mayes , 430 S.W.3d at 266.
Ms. Hink filed suggestions in opposition to the defendants' motion to dismiss stating the facts supporting her claim that the § 538.225 affidavit requirement violates the open courts provision in article I, section 14 of the Missouri Constitution by imposing an allegedly unreasonable burden on access to the courts. Instead of stating facts showing § 538.225 violates the right to trial by jury and the separation of powers, Ms. Hink summarily referred to "the same reasons discussed above" in her open courts argument. Ms. Hink's reference to the facts regarding her open courts claim necessarily failed to state the facts showing a violation of the distinct constitutional provisions guaranteeing the right to trial by jury and establishing separation of powers. Ms. Hink not only failed to adequately brief her claims that § 538.225 violates the right of trial by jury and separation of powers, but she also waived these claims by failing properly assert them in the circuit court in the first place.[2]
The correct resolution of this appeal requires nothing more than adherence to this Court's mandatory briefing rules, Rule 84.13, and the long-standing line of cases holding this Court avoids constitutional questions if the case can be otherwise resolved. Ms. Hink's failure to preserve her constitutional claims is dispositive. In my view, the appeal should be dismissed.

All statutory citations are to RSMo 2016, unless otherwise noted.

Section 516.105 provides: "All actions against physicians ... for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of." Although Ms. Hink made additional allegations of unconstitutionality of other statutory sections, she did not pursue those claims below and does not raise their dismissal on appeal.

The separate opinion suggests this Court should await better briefing to decide an unresolved constitutional issue, but this Court is declining to reach the only novel constitutional issue raised, as it concerns a hypothetical situation not relevant to the dismissal of Ms. Hink's suit. The remainder of the opinion explains that the other issues raised already were decided in Mahoney and are without merit. These holdings are well within this Court's prerogative to address.

Section 1.030 provides: "When any subject matter, party or person is described or referred to by words importing the singular number or the masculine gender, several matters and persons, and females as well as males, and bodies corporate as well as individuals, are included." Thus, section 538.225 's use of the singular-"a legally qualified health care provider"-cannot be read as a requirement only one expert must be used.

In Missouri, "standing is a prerequisite to the court's authority to address substantive issues and so must be addressed before all other issues." Schweich v. Nixon, 408 S.W.3d 769, 774 n.5 (Mo. banc 2013) . A party's "[l]ack of standing cannot be waived." Farmer v. Kinder, 89 S.W.3d 447, 451 (Mo. banc 2002) .

Aside from the fact the constitutional issues in this case are not preserved, this Court's role in interpreting and applying Missouri law is best served by deciding cases when counsel complies with the allegedly unconstitutional statutory requirement and fully develops the constitutional arguments. That did not occur in this case.

The principal opinion implicitly concedes this point by noting Ms. Hink's substitute brief is "inadequate to preserve this issue for review" because it simply argues § 538.225 violates the right to trial by jury and separation of powers "for the same reasons RSMo. § 538.225 violates the open courts clause of the Missouri Constitution." Because Ms. Hink's brief is inadequate to preserve her jury trial and separation of powers claims, Ms. Hink's substantively identical suggestions in opposition were also inadequate to properly raise these important constitutional issues in the circuit court.